Brian K. Julian – ISB No. 2360
Chris H. Hansen – ISB No. 3076
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426
Boise, Idaho 83707-7426
Telephone:   (208) 344-5800
Facsimile:   (208) 344-5510
E-Mail:   bjulian@ajhlaw.com
   chhansen@ajhlaw.com
Attorneys for Lake Pend Oreille School District No. 84;
and their Board of Trustees, Louise Zmuda, Betsy Walker

## UNITED STATES DISTRICT COURT DISTRICT OF IDAHO

| | |
|---|---|
| ET, a minor, SPRING TOWRY and CHARLES TOWRY individually, jointly, and on behalf of ET TOWRY their minor daughter,<br><br>Plaintiffs,<br><br>vs.<br><br>LAKE PEND OREILLE SCHOOL DISTRICT NO. 84, and their Board of Trustees; Louise Zumuda, individually, and as an employee of Lake Pend Oreille School District No. 84; Betsy Walker, individually and as an employee and agent of the Lake Pend Oreille School District No. 84; BONNER COUNTY SHERIFF'S DEPARTMENT; Deputy Justin Collins, individually and as an employee of the Bonner County Sheriff's Department; Deputy Kurt Lehman, individually and as an employee of Bonner County Sheriff's Department.<br><br>Defendants. | Case No.  10-cv-292<br><br>DISCLOSURE OF EXPERT WITNESSES BY LAKE PEND OREILLE SCHOOL DISTRICT, BETSY WALKER AND LOUISE ZMUDA |

DISCLOSURE OF EXPERT WITNESSES BY LAKE PEND OREILLE SCHOOL DISTRICT, BETSY WALKER AND LOUISE ZMUDA - 1

COME NOW, Defendants the Lake Pend Oreille School District, Betsy Walker and Louise Zmuda and pursuant to the Court's Scheduling Order as amended, discloses the following experts:

1.     Dr. Allen Bostwick
       901 East 2nd Avenue
       Spokane, Washington 99202-2257

A copy of Dr. Bostwick's report and curriculum vitae are attached hereto as Exhibit 1

2.     Christine Guzzardo, Ph.D.
       Northwest Neurobehavioral Institute
       421 West Riverside, Ste. 310
       Spokane, Washington 99201

A copy of Dr. Guzzardo's report and curriculum vitae are attached hereto as Exhibit 2.

3.     Joanne Curtis
       3361 Evergreen Drive
       Coeur d'Alene, Idaho 83815

A copy of Ms. Curtis' report and curriculum vitae are attached hereto as Exhibit 3.

Due to the fact these reports pertain to a minor child and contain confidential private information, these Defendants have sealed this disclosure. These Defendants have also electronically transmitted the expert reports and curriculum vitae independently of this filing.

These Defendants also reserve the right to add and/or identify an accountant or economist if and when the Plaintiffs provide a supplemental report from their accountant, Dan Black.

**DISCLOSURE OF EXPERT WITNESSES BY LAKE PEND OREILLE SCHOOL DISTRICT, BETSY WALKER AND LOUISE ZMUDA - 2**

These Defendants reserve the right to withdraw, modify or substitute the expert witnesses identified above.

DATED this _13th_ day of June, 2011.

ANDERSON, JULIAN & HULL LLP

By _____

Brian K. Julian, Of the Firm

Attorneys for DEFENDANTS

**DISCLOSURE OF EXPERT WITNESSES BY LAKE PEND OREILLE SCHOOL DISTRICT, BETSY WALKER AND LOUISE ZMUDA - 3**

<u>CERTIFICATE OF MAILING</u>

I HEREBY CERTIFY that on this 13 day of June, 2011, I served a true and correct copy of the foregoing DISCLOSURE OF EXPERT WITNESSES BY LAKE PEND OREILLE SCHOOL DISTRICT, BETSY WALKER AND LOUISE ZMUDA by delivering the same to each of the following attorneys of record, by the method indicated below, addressed as follows:

Kammi M. Smith
WINSTON & CASHATT
250 Northwest Blvd., Suite 107A
Coeur D'Alene, ID  83814
Telephone: (208) 667-2103
Facsimile:  (509) 838-613`

[ ]  U.S. Mail, postage prepaid
[ ]  Hand-Delivered
[ ]  Overnight Mail
[ ]  Facsimile
[X ]  CM/ECF Filing

Fred R. Palmer
106 W. Superior
Sandpoint, ID  83864
Telephone: (208) 263-8529
Facsimile:  (208) 263-8983

[ ]  U.S. Mail, postage prepaid
[ ]  Hand-Delivered
[ ]  Overnight Mail
[ ]  Facsimile
[X ]  CM/ECF Filing

Peter C. Erbland
Seann M. Mumford
PAINE HAMBLEN, LLP
701 E. Front Avenue, Suite 101
P. O. Box E
Coeur d'Alene, Idaho 83816-2530
Telephone:  (208) 664-8115
Facsimile:  (208) 664-6338

[ ]  U.S. Mail, postage prepaid
[ ]  Hand-Delivered
[ ]  Overnight Mail
[ ]  Facsimile
[X ]  CM/ECF Filing

*Attorneys for Bonner County
Sheriff's Department*

_____
Brian K. Julian

**DISCLOSURE OF EXPERT WITNESSES BY LAKE PEND OREILLE SCHOOL DISTRICT, BETSY WALKER AND LOUISE ZMUDA - 4**

**Allen D. Bostwick, Ph.D.**
*Clinical Psychology*
*Clinical Neuropsychology*
901 East 2nd Avenue, Suite 208
Spokane, Washington  99202
(509) 747-7700
Fax (509) 747-8538

May 27, 2011

Chris H.  Hansen, Attorney at Law
Anderson, Julian & Hull, LLP
C.W. Moore Plaza
250 South Fifth Street, Suite 700
Boise, Idaho  83707-7426

Re:  Spring K. Towry
Age:  36 years

　　　　Towry v. Lake Pend Orielle School District

DATE OF EVALUATION:  May 25, 2011

## INDEPENDENT PSYCHOLOGICAL EVALUATION

### PROCEDURES ADMINISTERED:

Diagnostic Interview with Mental Status Examination, review of medical and legal records
provided by Attorney Chris Hansen, MMPI-2, MCMI-III.

### PROCEDURAL NOTE:

Ms. Towry was met at the office by a law clerk (cf. Caitlin) with the law firm of Winston and
Cashett who observed the entire interview portion of the evaluation.

### RECORDS REVIEWED:

1. Deposition of Spring Towry dated 04/25/11.
2. Lake Pend Orielle School District 84 Interrogatories and Request for Production to
   Plaintiffs with Answers, dated 04/24/11.
3. Lake Pend Orielle School District 84 Interrogatories and Request for Production to
   Plaintiffs with Supplemental Answers, dated 03/04/11.
4. Bonner General Immediate Care medical records regarding Spring Towry from
   05/17/08-10/03/08.
5. Expert Disclosure of Elizabeth Mathes, LCPC dated 05/03/11 with a mental health
   assessment by Ms. Mathes dated 12/27/10.



Page Two
Re: Spring K. Towry

<u>BACKGROUND INFORMATION:</u>

Spring Towry is a pleasant and alert 36 year old divorced woman with a high school-equivalent education who is involved in a lawsuit due to alleged emotional trauma from an event involving her daughter Evelyn Towry on 01/09/09.  She is being seen for a Psychological Evaluation to assess for any psychological residuals related to the event of 01/09/09.  When Ms. Towry was asked why, in her opinion, she was referred for this evaluation she stated "I'm not really 100 percent sure." With subsequent probed inquiry she stated "To see if the events surrounding my daughter damaged me."  At this point the purpose and process of the evaluation were explained to her, as were the limits to confidentiality, and Ms. Towry provided written consent to proceed with the examination. She provided a copy of her Idaho driver's license for identification.

When asked to describe the incident on 01/09/09, she indicates she was at work and received a telephone call from Kootenai Elementary School informing her that the police were detaining her daughter (cf. Evelyn Towry) and they would release her to Ms. Towry's custody if she would go to the school.  She indicates she then left work and went to the school and when she arrived she saw two police officers in the parking lot escorting her daughter to their police vehicle. She indicates her daughter then began crying and screaming when she saw her mother, however the police would not release her to her and Ms. Towry was instructed to follow them to the police station to pick her up. She then went home to pick up her youngest daughter so her husband could go to work and then she went to the Juvenile Detention building and when she arrived she saw her daughter and the two police officers standing on the porch of the building.  Ms. Towry was informed that her daughter would not be jailed since she was less than 10 years of age.  The officers indicated they arranged for her daughter to have a tour of the facility.  When asked why she believes a tour was arranged for her daughter, Ms. Towry indicates she does not know why. She indicates that several minutes later she was allowed to go into the building and signed a form indicating she would appear, and her daughter was then released to her custody.  She indicates they went home thereafter.

Ms. Towry reports that once home she talked to her daughter who informed her that she could not go to the belated Christmas party and she became upset and kicked a couple of people. Ms. Towry reports her daughter seemed upset at home. At that point she allowed her daughter to go and watch movies and draw pictures, both of which she reports comforted her.

When asked if she discussed the matter with school personnel after the incident, Ms. Towry reports she did not want to talk to the school, however she subsequently talked to the Director of Special Services and was informed that the incident occurred because sometimes children need to learn.  Ms. Towry reports she did not agree with the assessment.

Ms. Towry never sent her daughter back to the school. She did subsequently return to work and alternated having one of her two oldest children watch her during the day.  She continued working through January and then took a Leave of Absence from work for the month of

Page Three
Re:  Spring K. Towry

BACKGROUND INFORMATION (CONTINUED):  February. She then again returned to work in March, after putting her daughter into a different school. She reports her daughter liked her new school.

When asked why she requested a Leave of Absence from work, Ms. Towry reports she needed to make arrangements to get her daughter into a new school. She also reports she felt nervous about having her daughter go anywhere, rather than being with her.

Ms. Towry reports her daughter has always been well-behaved at home and has no history of behavioral problems outside of school.  When asked what she attributes her daughter's behavior problems in school to she states it relates to school personnel not knowing how to deal with her daughter's Asperger's Disorder.  The incident of 01/09/09 occurred while her daughter was in the 2nd grade, and was almost 9 years of age.  She did, however, have a history of multiple suspensions through kindergarten, 1st and 2nd grades.  She indicates her daughter was started in a Day Treatment program from the 1st grade on.  The program was through the school district. She would attend the program for 1/2 day each day.  Ms. Towry reports it was a helpful program.

When asked how Ms. Towry intervened with regards to the multiple behavioral events/suspensions related to her daughter, she indicates she told her daughter to behave and her daughter apologized to her mother.  With regards to the 01/09/09 incident, Ms. Towry reports she did not intervene with her daughter because her daughter was not misbehaving at the time Ms. Towry picked her up at the Juvenile Detention building.

When asked specifically what problems she is currently experiencing, that she would relate to the incident of 01/09/09, she states she still has problems leaving Sandpoint because she fears she will be unable to help her daughter if she has problems. When asked if there are any other current problems she is experiencing she stated that her other problems are related to her divorce. She admits she divorced her husband because she obsesses over her daughter and was not attentive to her husband.

Ms. Towry has no history of mental health treatment.  When asked why she has not sought treatment over the past 2.5 years, she states she does not have any medical insurance and cannot afford treatment.  When asked specifically what she would wish to be treated for, were she to have medical coverage, she stated she does not know for sure, because she is not doctor, but she suspects it would be for anxiety.

When asked what improvements she has appreciated in any of her symptoms over time, she stated "I think I've relaxed a little bit.  I have continued a relationship with my ex-husband.  I was able enough to get a job again."

Page Four
Re:  Spring K. Towry

BACKGROUND INFORMATION (CONTINUED):

Ms. Towry's only known neurological history relates to migraine headaches, which she has experienced since age 10 or 12.  She has no history of drug or alcohol abuse.  She has no mental health treatment history.  She denies any legal history.  She never served in the military.

Ms. Towry reports she finished working through January 2009, took a Leave of Absence for the month of February, and then returned to work again in March.  She stated that on 03/01/09 she resumed her position as Manager over cashiers.  She reports she had previously  managed her job very well however on that date she could not figure out her schedule board for her employees and she could not manage her employees properly and she panicked.  She asked someone for assistance but none was given. She reports she then went into the bathroom and cried for one hour. She subsequently walked out of the store, approximately one-half hour before her shift ended.  She returned to work the following day, as a cashier, at which time management informed her she could be fired for her behavior the previous day.  She thus quit her job at that time rather than risk being fired.  She had been at her job for 5.5 years.  She indicates she had no problems with work prior to the incident on 03/01/09.  She notes that prior to the she was very worried she would be called by her daughter's new school to pick her up.

Ms. Towry reports she began working as a Wal-Mart Garden Center Associate, on a part time basis, on 03/30/11.  She denies having any current job difficulties but states she still worries about having to leave work to pick up her daughter.  Upon further inquiry, however, she notes that her daughter has done very, very well in her school over the past two years and during this period of time Ms. Towry has never been called to school to pick her daughter up early.  She stated she knows that her fear is not rational.  She reports she gets along with people at work very well.

Ms. Towry has a modestly varied work history.  In high school she worked with K-9 Police Dogs for one year. She worked as a housekeeper.  At age 17 she moved to Utah and obtained two fast food jobs. That same year she moved back to Idaho and did varied restaurant jobs.  She indicates she married at age 17 and subsequently worked for a few lumber mills and did restaurant work. She began working for Wal-Mart initially in 2001 and then quit in 2009. She worked as a Customer Service Manager for 5.5 years.  She indicates she was working on a part time basis the last three years of her employment (cf. 2006-2009).

Ms. Towry initially indicated she completed  high school.  Upon further inquiry, she states she has a high school equivalency education.  Given her history of leaving home and working at age 17 and 18, she was asked how she completed school.  She indicates she was home schooled in the 11th grade and actually finished the 11th and 12th grade in one year.  When asked who taught her she indicates she was taught by her mother, but primarily by herself.  She had previously attended public school in Sandpoint, Idaho.  She did not repeat any grades in school but reports she was diagnosed with ADD in kindergarten.  She was not placed on any medication at that

Page Five
Re:  Spring K. Towry

BACKGROUND INFORMATION (CONTINUED):  time.  When asked why she left public school she stated "Because I didn't feel the education they were giving me was good enough." She indicated the school wanted to put her in Resource Room for math.

Ms. Towry reports she has been married twice.  She was initially married at age 18, which she believes was in 1992.  She was divorced in 1997.  She and her husband had two children, a daughter age 17 and a son age 15.  They are reportedly doing well in life, however she does note they have been in counseling for depression-related issues for the past couple of years.  When asked what types of difficulties interfered with the marriage she stated "I think we were too young and he was not a very good father and really didn't want to have kids."  She remarried in perhaps 2001, she is not sure, and notes they had been together since the end of 1998.  They divorced in February 2010.  Notably, they have been living together again for approximately the past one year.  She reports their relationship has been working out well for her.  She and her husband have two children, daughters 11 and 8.  The 11 year old daughter (Evelyn) is reportedly doing well currently.  The 8 year old daughter is also doing well.  Daughter Evelyn Towry reportedly suffers from Pervasive Developmental Disorder, which Ms. Towry believes relates to decreased fine motor coordination and a learning disability.  The Learning Disability involves reading, writing, and math. She was also diagnosed with Asperger's Disorder in kindergarten. She indicates her daughter is currently taking Strattera and Respirdone.  She has been on these medications since kindergarten/1st grade. When asked about mental retardation, Ms. Towry states she does not believe her daughter has any retardation and in fact believes she is quite intelligent and her low scores on testing were related to her psychiatric disability.

Ms. Towry reports she currently lives in a mobile home with her ex-husband and the four children.  Her typical household chores include vacuuming, preparing breakfast and dinner, dishes, gardening, feeding the chickens, and tending to their dogs and cats. She also does the laundry and shopping.  She reports she manages her own finances and she denies difficulties doing so.

Ms. Towry reports she drives an automobile and she has no problems with driving.

Ms. Towry reports her recent sleep pattern has been "usually okay."  She does not take naps during the day. She typically goes to bed at 10:00-11:00 p.m. and gets up at 5:00-6:00 a.m.  She generally feels rested upon awakening the morning.

Ms. Towry reports her recent appetite has been "average."  She has been able to lose some weight through dieting and working out. She stated she does not know her current weight, and wished to not estimate it. She appears to be approximately 250 pounds, by casual observation. She stands 5' 10", by her report.

In terms of leisure and recreational interests and activities, Ms. Towry reports she enjoys reading, and particularly enjoys mysteries, drama, and thrillers.  She enjoys making candles, soap, and

Page Six
Re: Spring K. Towry

BACKGROUND INFORMATION (CONTINUED):  bathroom body products. She likes gardening and she goes for walks. She also bicycles and works out at a gym. She infrequently goes fishing.  She enjoys television and listening to music. She reports she loves cleaning her house.  When asked what activities she and her ex-husband share in, she indicates they are currently limited.  I believe she indicated her husband is currently out of work. They watch some television together and they watch one of their daughters in martial arts. In terms of social activities, she states she has no close friends and is not socially involved. She reports her family does live close by, however she does not see them or talk with them very frequently.

When asked what her current goals in life are, Ms. Towry stated "I'm not really sure.  Just raising my children."  She indicated that if she would choose to go back to school she would pursue a Music degree.  When asked about her music background she states she was in Choir in junior high school.

By way of brief remote history, Ms. Towry reports she is originally from Tucson, Arizona but grew up primarily in Athol, Idaho.  She grew up with her mother, noting her parents divorced prior to her birth.  She actually met her father for the first time at age 17.  Her mother did remarry and she grew up with a stepfather for a short period of time. She indicates her mother is 56 years old and admits she is not certain about her mother's state of health. Her mother does not work outside the home.  She indicates she stopped communicating with her mother last Winter because of issues centering around drugs and alcohol in her mother's environment.  She has three half-sisters and two half-brothers and indicates she is the second oldest of the six children. She had another sister, who was the oldest, who died at age 20 from kidney failure.  She was quite close with her sister.  She indicates her first stepfather was slightly physically abusive, however she contends she has forgiven him. She tended to be socially shy but not reserved during her developmental years. She notes the family lived in the woods.  She was involved in the Choir in middle school in the 9th and 10th grades.  She left home at age 17.

When asked if there was anything else she wished to add for the purse of this evaluation, Ms. Towry indicated she could not think of anything additional to add.

REVIEW OF RECORDS:

A Deposition of Spring Towry taken on April 25, 2011 has been read in its entirety.

A Document entitled Lake Pend Orielle School District 84 Interrogatories and Request for Production to Plaintiffs with Answers is dated January 24, 2011 and has been reviewed in its entirety.  Spring and Charles Towry indicated the physical restraint, arrest, handcuffing, transporting in a police vehicle, and pat-down search of an emotionally disabled 8 year old child suffering from Asperger's Disease set her maturity range back.  Further, right after the incident, she was reportedly afraid to go back to school, was very "clingy" in public, and would be scared and upset whenever she saw a policeman.  Spring and Charles Towry were very upset and had

Page Seven
Re:  Spring K. Towry

REVIEW OF RECORDS (CONTINUED):  trouble sleeping. Spring reportedly experiencing heightened stress and anxiety at work and in her relationships.  Spring and Charles had concerns about Evelyn's future and they feel their relationship with her is less joyful. Spring and Charles Towry indicated they had received treatment for unspecified problems over the past five years from Mary Quinhurst, Occupational Therapist; Cindy Pugulseki at North Idaho Children's Mental Health; pediatricians Joyce Gilbert, M.D. and Robin Helm, M.D.; and child psychiatrist Sandra Nelson, M.D.  All providers were reportedly in Sandpoint.

The Towry's alleged the School District did not provide training on Asperger's Syndrome and that due to their daughter's Asperger Disorder she was repeatedly punished, suspended, and sent home by her teachers and the principal.  They also indicate they were not given sufficient notice of an IEP meeting in December 2008 and could not attend the meeting at that time and reported it was not rescheduled.  The modifications needed in their daughter's program could reportedly have been discussed at that meeting.

The Towry's report special damages include Spring Towry's loss wages of $1,650.00 per month, since 03/05/09.  They also allege emotional distress, future counseling needs and costs, living assistance and medications of an undetermined amount.  The Towry's also indicate that a loss of sleep, anxiety, and stress caused them to feel depressed and their ability to love and care for their children and each other was affected.  They noted further they do not trust the teachers and principal at Kootenai Elementary School.  It is further noted that not trusting teachers has slowed down their daughter's learning and she spends more time in Special Education classrooms.  Finally, they are reportedly concerned about how her fear and distrust of policemen will affect her respect for the law and for authority.

No mental health treatment related to their complaint had been received.  It was noted that Spring Towry met with their children's' pediatrician, Dr. Robin Helm, on 06/05/09 and again in June 2010.

A Document entitled Lake Pend Orielle School District 84 Interrogatories and Request for Production to Plaintiff's with Supplemental Answers is dated 03/04/11.  This document has been read in its entirety.  It is of note in the Supplemental Answer to Interrogatory No. 7 it is alleged that due to Asperger's Disease, ET was either placed in  detention or suspended on 12/21/08 (? 2007), 04/11/08, 11/03/08, 11/20/08, 12/08/08, 12/12/08, and 01/09/09.  These incidents are taken from the Guidance Log of Kootenai Elementary School.

An Exhibit entitled Expert Disclosure of Elizabeth Mathes, LCPC, dated 05/03/11, has been reviewed in its entirety.  The document contains Ms. Mathes assessment report dated 12/27/10, in which she examined Evelyn Towry and Spring Towry.  It also includes a copy of her Vita, history of Expert Witness activities since 2003, and a Fee Schedule for legal testimony.

Page Eight
Re:  Spring K. Towry

<u>REVIEW OF RECORDS (CONTINUED)</u>:

Elizabeth Mathes, LCPC submitted an Assessment Report dated 12/27/10.  She evaluated Evelyn
Towry and Spring Towry.  This document has been reviewed in its entirety.  A focus on Ms.
Mathes mental health assessment of Spring Towry is not possible since no formal or structured
examination is reported.  Ms. Mathes indicates that Spring Towry's symptoms related to the
incident are long term and continue to this day.  Reference to Evelyn Towry's pediatric medical
report in the Spring 2009 reportedly expressed some concern for Spring Towry's excessive
anxiety related to Evelyn's arrest.  It is further noted that Spring Towry quit her job of 7 years at
Wal-Mart and did not return because of a need to find an alternative school environment for her
daughter, and to an increase in her own anxiety.  She indicated that at the time of the examination
Spring Towry reported strong anxiety when she does not have access to a telephone.  She
reportedly worries excessively when her daughter ET is out of her care.  She will reportedly not
allow ET to go anywhere other than to school, therapy, or home.  Finally, Ms. Mathes stated that
Spring Towry needs to address her own fears and anxieties in mental health treatment.  Given
that she reports a history of agoraphobia, the treatment was expected to be weekly over a year or
two period. There is no formal diagnosis of Spring Towry's mental health condition.

Medical records for Spring Towry from Bonner General Immediate Care are included for review
between the dates of 05/17/08 through 10/03/08.  Marilyn Strand, M.D. noted on 10/03/08 that
patient was being followed for an abscess below her right breast that grew MRSA cultures.  She
had been tried on Bactrim but had an allergic reaction and that medication was discontinued.  She
was taking Hydrocodone.  A follow-up note dated 10/05/08 indicates the MRSA was identified
from a biopsy taken on 09/25/08.  Patient had reportedly loss 50 pounds, and was down to 222
pounds, on 09/25/08.  She presented to the clinic with a complaint of a lump under her right
breast for a period of three days.  An office visit note dated 05/17/08 indicates she complained of
left foot pain, with no known trauma.  She reportedly has a long term history of plantar fasciitis
for which she wears bilateral orthodic shoes.  She also had a history of bilateral heel spur
removals and had a left foot fracture four years previously.  She complained it was painful for her
to walk. She noted that she was a Wal-Mart Supervisor and was walking several miles per day
with her job.  Dr. Strand assessed acute left foot pain. She was prescribed Ibuprofen and
Hydrocodone for break through pain. She was placed on limited duty work with a restriction of
walking less than 50 yards.

This concludes the review of records.

<u>MENTAL STATUS</u>:

Ms. Towry arrived for her scheduled appointment on time and was unaccompanied. She was met
at the office by Caitlin, a law clerk with Winston and Cashett.  Ms. Towry was socially
appropriate and cooperative throughout the examination.  She exhibits relatively good dress,

Page Nine
Re: Spring K. Towry

MENTAL STATUS (CONTINUED): grooming, and hygiene. She is dressed in clean blue jeans, a short sleeved top with a long sleeved sweater, she has a visible large tattoo on her chest and she wears tennis shoes with socks. She appears to wear a mild amount of make-up, appropriately. Her hair is clean and combed. She wears a watch on her left wrist. She wears earrings and has two studs around her left eye. Her fingernails are relatively clean and neat in appearance. She does not wear glasses and she reports her vision is within functional limits without corrective lenses. Her hearing is within functional limits in social conversation. She is alert, attentive, and oriented to person, place, and time. Ms. Towry presents in no acute emotional distress. Her mood is stressed, anxious and slightly depressed. Her affect is neutral and mildly labile. She was tearful several times during the interview. She exhibits no significant psychomotor agitation or retardation nor signs or symptoms of a major thought disorder. She exhibits no unusual behavioral mannerisms. She exhibits no overt pain behavior. There is no evidence for undue fatigue noted at the conclusion of the evaluation.

Ms. Towry relates a family history of mental illness. She has a maternal grandmother who was reportedly psychiatrically hospitalized in her twenties, for an unknown diagnosis. She also reports she has one aunt who has some problem but she does not know the nature of the problem.

Ms. Towry describes her typical mood as "probably melancholy."

Ms. Towry is able to accurately state the day and date. She correctly identifies the current President and Vice-president. She believes the Governor of Idaho is Potter. She is unsure of the capital of Idaho but believes it may be Boise. For two current world events, she stated "War in Middle East." When asked what war she is referring to she stated "Palestine and Iraq." For another world event she stated "All the tornados." She is able to recall 4/4 unrelated words on immediate recall and 3/4 at 5 minute delayed recall. She was able to derive the additional word with a semantic cue. She correctly spells the word WORLD forward and backward. She committed no errors on Serial 3 Addition. She committed 1 error on Serial 7 Subtraction, following a self-initiated repetition of the task. She correctly identifies similarities between banana-orange and drum-piano. Her interpretation of proverbs is variable. Specifically, she interpreted the Strike While The Iron Is Hot proverb to mean "Act quickly." For the Shallow Brooks proverb she stated "Because the water is shallow it makes more noise..." She thus presents as mildly concrete in her thought processes. Her social reasoning is within the Low Average range. She indicated that people should pay taxes "Because the State Tax helps with roads and recreation, and because they are required to by law." For the envelope scenario she stated "Drop it in the mail." For the movie theater scenario she stated "Go report to the ticket stand." She incorrectly computed 7 x 6 to get "36." She slowly computed that $7.50 from $18.00 is "$10.50." She correctly calculated 8 x 3 + 11 to get "35." During her calculations she commented "I'm really bad with math." She is able to recall 6 digits forward and 3 digits backward which reflects Low Average auditory immediate memory for digits.

Page Ten
Re: Spring K. Towry

<u>MMPI-2:</u>

Ms. Towry's 0-1625789/34:  L'KF/  MMPI-2 profile appears to be a valid representation of her current state of psychological functioning.  She approached answering the items on this instrument in a relatively open and disclosive manner and there is no evidence for significant over-reporting or minimization of psychological symptoms reflected in her Validity Scale profile. Her Clinical Scale profile may thus be interpreted according to standard rules of interpretation.

Ms. Towry's Clinical Scale profile is within normal limits with no Scale exceeding a T Score of 62.  There is thus no evidence for any psychopathology nor for a severe character disorder reflected in her profile.  Notably, the Scales associated with anxiety-related conditions are amongst her lowest Clinical Scale scores.  There is also no evidence for depression, an acute adjustment reaction, a major thought disorder, a somatoform disorder, nor for a severe personality disorder reflected in her profile.

<u>MCMI-III:</u>

Ms. Towry's profile appears to be valid, and without evidence for any significant minimization or embellishment of psychological symptoms.  Her profile reflects prominent personality patterns which include schizoid, avoidant, and compulsive features.  She tends to be rather rigid in her obsessive worry and compulsiveness.  She has underlying feelings of insecurity and tends to be intropunitive in response to stress and conflict she experiences in life.  She may experience feelings of guilt and self-condemnation and tends to focus on minimal or irrelevant aspects in her life rather than focus on her own feelings of inadequacy and failure.  She may consequently experience a chronic state of tension and underlying resentment.

Ms. Towry's personality features more probably than not result in her more transitory anxiety-related conditions.

<u>DIAGNOSIS:</u>

| | | |
|---|---|---|
| Axis I: | V71.09 | No Clinical Syndrome identified. |
| Axis II: | 301.9 | Personality Disorder NOS, with avoidant and obsessive-compulsive features, and with possible schizoid features noted on objective testing. |
| Axis III: | Deferred. | |
| Axis IV: | Raising a Special Needs child, litigation. | |
| Axis V: | Current GAF: 65-70. | |

Page Eleven
Re:  Spring K. Towry

## SUMMARY AND DISCUSSION:

Spring Towry is an alert 36 year old divorced, albeit reunited, woman with a reported high school equivalent education who is being seen for an Independent Psychological Evaluation to rule-out any psychological problems related to an incident in which her disabled daughter was arrested and taken from her school after allegedly assaulting her teacher on 01/09/09.  Ms. Towry has had no mental health treatment, nor diagnosed mental health condition, following that event, however she is involved in litigation for alleged emotional distress, anxiety-related conditions, and a loss of income while she was off work following the incident.

Ms. Towry is not spontaneously endorsing any specific psychological, emotional, or behavioral problems.  There is reference in her records to panic attacks, agoraphobia, and more generalized anxiety.  Upon direct inquiry, she acknowledges she feels anxious and worried if she leaves Sandpoint, Idaho without her daughter since she worries she will not be able to provide assistance to her daughter if needed while she is out of town.  She has no difficulty leaving town in the accompaniment of her daughter.  There is no evidence of anxiety if she leaves her home in any other circumstance.  There is thus no evidence for agoraphobia reflected in her history and report of problems.

Ms. Towry is not reporting any current problems with "panic attacks."  The condition has apparently never been diagnosed, and she has received no treatment for panic disorder. Her deposition testimony indicates she has experienced anxiety-attack symptoms when she believes she is going to be late picking up her daughter from school, or in other ways transporting her daughter to scheduled events or appointments.  She made reference to this occurring when she is caught in traffic or having to wait for a train, both of which she has no direct control over.  These reported anxiety-related episodes are situational specific, as well as always relating to her disabled daughter.  Her anxiety-related symptoms thus reflect more of a specific fear or phobia and are consistent with her long-standing personality features and do not reflect a trauma-induced anxiety disorder.

Ms. Towry's objective psychological testing results are mildly mixed in that she presents with an entirely normal MMPI-2 profile and her MCMI-III profile reflects relatively well-defined personality features which result in more of a chronic anxiety condition for her.

On the basis of her current psychological evaluation, there is no evidence, on a more probable than not basis, that Ms. Towry has incurred any persisting psychological problems related to the incident of 01/09/09.  No psychological treatment for any related conditions are indicated and none are thus recommended.

Page Twelve
Re:  Spring K. Towry


I wish to thank you once again for asking me to see Ms. Spring Towry in consultation.


Yours sincerely,

Allen D. Bostwick, Ph.D.

**Allen D. Bostwick, Ph.D.**
*Clinical Psychology*
*Clinical Neuropsychology*
901 East 2nd Avenue, Suite 208
Spokane, Washington  99202
(509) 747-7700
Fax (509) 747-8538

## VITA

| | |
|---|---|
| **NAME:** | **Allen D. Bostwick, Ph.D.** |
| **BUSINESS ADDRESS:** | **901 E. 2nd Avenue, Suite 208**<br>**Spokane, Washington  99202**<br>**(509) 747-7700** |
| **HOME ADDRESS:** | **4012 E. 20th**<br>**Spokane, Washington  99223**<br>**(509) 535-2241** |
| **MILITARY STATUS:** | **Honorable Discharge, U.S.N.R., 1973** |
| **EDUCATION:** | **B.S., Psychology; March 1974**<br>**University of Washington** |
| | **M.S., Clinical Psychology; June, 1976**<br>**Wichita State University** |
| | **Ph.D., Clinical Psychology; December, 1980**<br>**University of Wisconsin-Milwaukee** |
| **LICENSURE:** | **WASHINGTON STATE #881** |
| **HOSPITAL PRIVILEGES:** | **Deaconess Medical Center**<br>**Sacred Heart Medical Center**<br>**Holy Family Hospital** |
| **CONSULTANT:** | |
| **1983 - Present** | **Department of Labor and Industries**<br>**State of Washington** |
| **1986 - Present** | **Inland Medical Evaluations, Panel Evaluations** |
| **1988 - Present** | **Division of Disability Determination Services,**<br>**Department of Social and Health Services,**<br>**State of Washington** |

| | |
|---|---|
| 1988 - Present | Medical Consultants Network, Panel Evaluations |
| 1990 - Present | Objective Medical Assessments Corporation, Panel Evaluations |
| 1990 – 2009 | Medical Expert, Office of Hearings and Appeals, Social Security Administration |
| 1992 - Present | Division of Vocational Rehabilitation Department of Social and Health Services, State of Washington |
| 1994 - Present | One-Plus Evaluations, Panel Evaluations |
| 2008 – Present | Northwest Medical Experts, Inc. Panel Evaluations |

## PROFESSIONAL EXPERIENCES:

| | |
|---|---|
| May 1981 to Present | Private Practice:  Clinical Psychology;    Clinical Neuropsychology.  Spokane, Washington |
| January 2000 to Present | Rehablogic, Inc. Vice-president Research and Development Spokane, Washington |
| January 1983 to June 1992 | St. Luke's Memorial Hospital Rehabilitation Unit Clinical Neuropsychologist S. 711 Cowley Spokane, Washington  99210 |
| May 1981 to June 1991 | Deaconess Medical Center Rehabilitation Unit Clinical Neuropsychologist W. 800 5th Spokane, Washington  99204 |
| January 1981 to May 1981 | Program Director The Antonian School Route 2, Box 50 Cheney, Washington   99004 |

| | |
|---|---|
| **1979 to 1980** | **Clinical Psychology Internship**<br>**Indiana University School of Medicine**<br>**Department of Psychiatry**<br>**Section of Psychology**<br>**Indianapolis, Indiana  46202** |

**Emphasized Rotations:**

**Medical Psychology Department**
**Neuropsychology Service**
**Rehabilitation Service**
**Chronic Pain Rehabilitation Clinic**
**Biofeedback Clinic**
**Consultation Services**

**Larue D. Carter Memorial Hospital:**

**Adult Outpatient Clinic**
**Adult Inpatient Clinic**

| | |
|---|---|
| **1980** | **Instructor, Psychology 101**<br>**Indiana University-Purdue University**<br>**Indianapolis, Indiana  46202** |
| **1977 - 1978** | **Volunteer Counselor**<br>**The Counseling Center of Milwaukee**<br>**Milwaukee, Wisconsin   53202** |
| **1977 - 1978** | **Staff Associate**<br>**Vernon, Williams, & Hodgson, Inc.**<br>**Management Consultants**<br>**700 N. Water Street, Suite 646**<br>**Milwaukee, Wisconsin  53211** |
| **1976 - 1978** | **Teaching Assistant**<br>**Department of Psychology**<br>**University of Wisconsin-Milwaukee**<br>**Milwaukee, Wisconsin   53201** |
| **1975 - 1976** | **Behavior Modification Specialist**<br>**Starkey Developmental Center for The Retarded**<br>**Wichita, Kansas   67208** |

1976 - 1976                          Graduate Assistant
                                     Department of Psychology
                                     Wichita State University
                                     Wichita, Kansas   67208

1975 - (summer)                      Resident Teaching Parent
                                     Wichita Youth Home
                                     Wichita, Kansas   67208

1974 - 1975                          Research Assistant
                                     Department of Psychology
                                     Wichita State University
                                     Wichita, Kansas  67208

1973 - 1974                          In-patient Crisis Counselor
                                     Valley General Hospital
                                     Renton, Washington  98055

1973                                 Undergraduate Research Assistant
                                     Department of Psychology
                                     University of Washington
                                     Seattle, Washington  98125

**THESIS TITLE:** Modification of the Galvanic Skin Response Through Omission Training with Humans.

**DISSERTATION TITLE:** Tests of Three Models of Episodic Depression.

**PAPERS:**

Bostwick, A. D.  Comparison of the efficiency and durability of responding effected by two modified DRL Procedures with humans. Psychological Record, 1977, 1, 225-233.

Bostwick, A. D., & Porter, J. J.  An efficient inexpensive foodhopper for monitoring feeding patterns of rats. Behavior Research Methods and Instrumentation, 1977, 9(5), 471-472.

Bostwick, A. D., & Passman, R. H.  Postpartum depression:  A review and integrative behavioral formulation.  Unpublished.

Bostwick, A. D., & Johnston, N.  A Functional Capacities Assessment Form for neuropsychologists.  In preparation.

## PRESENTATIONS:

Bostwick, A. D., & Linton, S. J.  Behavior Analysis revisited.  Paper presented at the Midwestern Association for Behavioral Analysis (MABA) Convention, Chicago, May, 1975.

Buel, C. L., & Bostwick, A. D.  Effects of a collateral alternative response in response eliminations by adjusting and constant omission training schedules with humans.  MABA Convention, Washington, D. C.  November, 1977.

Bostwick, A. D.  Temporal Energization of Behavior.  National Academy of Science, Washington, D. C., 1978.

Bostwick, A. D.  Psychological treatment of chronic pain.  Washington State Psychological Association presentation.  Spring Convention, 1986.

Bostwick, A. D.  Psychological treatment of chronic headache.  Spokane Psychological Association, 1989.

Bostwick, A. D.  Traumatic Brain Injury.  Nine hour presentation to Spokane Community Mental Health Center, September 1990.

Bostwick, A. D.  Traumatic Brain Injury.  Presentation to University of Washington School of Social Work, Staff Trainer since March 1991.

## PROFESSIONAL ORGANIZATIONS:

American Psychological Association
   Division 12:  Clinical Psychology
   Division 40:  Clinical Neuropsychology
National Academy of Neuropsychology
National Register of Health Care Providers in
   Psychology
Washington State Psychological Association,
   Past President, Chapter I

# Allen D. Bostwick, Ph.D.

*Clinical Psychology*
*Clinical Neuropsychology*
901 East 2nd Avenue, Suite 208
Spokane, Washington  99202
(509) 747-7700
Fax (509) 747-8538

## VITA

**NAME:**  Allen D. Bostwick, Ph.D.

**BUSINESS ADDRESS:**  901 E. 2nd Avenue, Suite 208
Spokane, Washington  99202
(509) 747-7700

**HOME ADDRESS:**  4012 E. 20th
Spokane, Washington  99223
(509) 535-2241

**MILITARY STATUS:**  Honorable Discharge, U.S.N.R., 1973

**EDUCATION:**  B.S., Psychology; March 1974
University of Washington

M.S., Clinical Psychology; June, 1976
Wichita State University

Ph.D., Clinical Psychology; December, 1980
University of Wisconsin-Milwaukee

**LICENSURE:**  WASHINGTON STATE #881

**HOSPITAL PRIVILEGES:**  Deaconess Medical Center
Sacred Heart Medical Center
Holy Family Hospital

**CONSULTANT:**

1983 - Present  Department of Labor and Industries
State of Washington

1986 - Present  Inland Medical Evaluations, Panel Evaluations

1988 - Present  Division of Disability Determination Services,
Department of Social and Health Services,
State of Washington

| | |
|---|---|
| **1988 - Present** | **Medical Consultants Network,**<br>**Panel Evaluations** |
| **1990 - Present** | **Objective Medical Assessments Corporation,**<br>**Panel Evaluations** |
| **1990 – 2009** | **Medical Expert, Office of Hearings and Appeals,**<br>**Social Security Administration** |
| **1992 - Present** | **Division of Vocational Rehabilitation**<br>**Department of Social and Health Services,**<br>**State of Washington** |
| **1994 - Present** | **One-Plus Evaluations, Panel Evaluations** |
| **2008 – Present** | **Northwest Medical Experts, Inc.**<br>**Panel Evaluations** |

## PROFESSIONAL EXPERIENCES:

| | |
|---|---|
| **May 1981 to Present** | **Private Practice:  Clinical Psychology;     Clinical**<br>**Neuropsychology.  Spokane, Washington** |
| **January 2000 to Present** | **Rehablogic, Inc.**<br>**Vice-president Research and Development**<br>**Spokane, Washington** |
| **January 1983 to June 1992** | **St. Luke's Memorial Hospital**<br>**Rehabilitation Unit**<br>**Clinical Neuropsychologist**<br>**S. 711 Cowley**<br>**Spokane, Washington  99210** |
| **May 1981 to June 1991** | **Deaconess Medical Center**<br>**Rehabilitation Unit**<br>**Clinical Neuropsychologist**<br>**W. 800 5th**<br>**Spokane, Washington  99204** |
| **January 1981 to May 1981** | **Program Director**<br>**The Antonian School**<br>**Route 2, Box 50**<br>**Cheney, Washington   99004** |

| | |
|---|---|
| 1979 to 1980 | **Clinical Psychology Internship**<br>**Indiana University School of Medicine**<br>**Department of Psychiatry**<br>**Section of Psychology**<br>**Indianapolis, Indiana  46202** |
| | **Emphasized Rotations:** |
| | **Medical Psychology Department**<br>**Neuropsychology Service**<br>**Rehabilitation Service**<br>**Chronic Pain Rehabilitation Clinic**<br>**Biofeedback Clinic**<br>**Consultation Services** |
| | **Larue D. Carter Memorial Hospital:** |
| | **Adult Outpatient Clinic**<br>**Adult Inpatient Clinic** |
| 1980 | **Instructor, Psychology 101**<br>**Indiana University-Purdue University**<br>**Indianapolis, Indiana  46202** |
| 1977 - 1978 | **Volunteer Counselor**<br>**The Counseling Center of Milwaukee**<br>**Milwaukee, Wisconsin  53202** |
| 1977 - 1978 | **Staff Associate**<br>**Vernon, Williams, & Hodgson, Inc.**<br>**Management Consultants**<br>**700 N. Water Street, Suite 646**<br>**Milwaukee, Wisconsin  53211** |
| 1976 - 1978 | **Teaching Assistant**<br>**Department of Psychology**<br>**University of Wisconsin-Milwaukee**<br>**Milwaukee, Wisconsin   53201** |
| 1975 - 1976 | **Behavior Modification Specialist**<br>**Starkey Developmental Center for The Retarded**<br>**Wichita, Kansas   67208** |

| 1976 - 1976 | Graduate Assistant<br>Department of Psychology<br>Wichita State University<br>Wichita, Kansas  67208 |
|---|---|
| 1975 - (summer) | Resident Teaching Parent<br>Wichita Youth Home<br>Wichita, Kansas  67208 |
| 1974 - 1975 | Research Assistant<br>Department of Psychology<br>Wichita State University<br>Wichita, Kansas  67208 |
| 1973 - 1974 | In-patient Crisis Counselor<br>Valley General Hospital<br>Renton, Washington  98055 |
| 1973 | Undergraduate Research Assistant<br>Department of Psychology<br>University of Washington<br>Seattle, Washington  98125 |

**THESIS TITLE:**  Modification of the Galvanic Skin Response Through Omission Training with Humans.

**DISSERTATION TITLE:**  Tests of Three Models of Episodic Depression.

**PAPERS:**

Bostwick, A. D.  Comparison of the efficiency and durability of responding effected by two modified DRL Procedures with humans.  Psychological Record,  1977, 1, 225-233.

Bostwick, A. D., & Porter, J. J.  An efficient inexpensive foodhopper for monitoring feeding patterns of rats.  Behavior Research Methods and Instrumentation,  1977, 9(5), 471-472.

Bostwick, A. D., & Passman, R. H.  Postpartum depression:  A review and integrative behavioral formulation.  Unpublished.

Bostwick, A. D., & Johnston, N.  A Functional Capacities Assessment Form for neuropsychologists.  In preparation.

**PRESENTATIONS:**

Bostwick, A. D., & Linton, S. J.  Behavior Analysis revisited.  Paper presented at the Midwestern Association for Behavioral Analysis (MABA) Convention, Chicago, May, 1975.

Buel, C. L., & Bostwick, A. D.  Effects of a collateral alternative response in response eliminations by adjusting and constant omission training schedules with humans.  MABA Convention, Washington, D. C.  November, 1977.

Bostwick, A. D.  Temporal Energization of Behavior.  National Academy of Science, Washington, D. C., 1978.

Bostwick, A. D.  Psychological treatment of chronic pain.  Washington State Psychological Association presentation.  Spring Convention, 1986.

Bostwick, A. D.  Psychological treatment of chronic headache.  Spokane Psychological Association, 1989.

Bostwick, A. D.  Traumatic Brain Injury.  Nine hour presentation to Spokane Community Mental Health Center, September 1990.

Bostwick, A. D.  Traumatic Brain Injury.  Presentation to University of Washington School of Social Work, Staff Trainer since March 1991.

**PROFESSIONAL ORGANIZATIONS:**

American Psychological Association
Division 12:  Clinical Psychology
Division 40:  Clinical Neuropsychology
National Academy of Neuropsychology
National Register of Health Care Providers in Psychology
Washington State Psychological Association, Past President, Chapter I



## NORTHWEST neuro behavioral INSTITUTE

June 2, 2011

My name is Christine R. Guzzardo, Ph.D. I am a licensed psychologist in the State of Washington. I work in private practice as a Clinical Neuropsychologist. The attached Curriculum Vitae details my credentials, education, clinical experience, and list of publications.

**Prior testimony or deposition:**

Within the last 5 years I have testified in three contested parental-rights termination trials on behalf of the State of Washington. These cases involved the minor children I evaluated at the request of the State. One took place in December 2009 (S.R.). One took place in March 2010 (G.A.). One took place in May 2011 (D.B.).

**Current Review of Records and Impressions:**

I was retained by Chris Hanson from the law firm Anderson, Julian and Hull, LLP as an expert witness in the case of Towry vs. Lake Pend Oreille School District. I was asked to review approximately 1000 pages of documents and to provide my expert opinion regarding any potential adverse effects to Evelyn Towry secondary to the events of 1/9/09. I reviewed approximately 1000 documents that included school records, medical records, therapeutic and treatment records, legal records related to the events of 1/9/09, the opinions of plaintiffs' expert witness, and depositions of Evelyn Towry's parents.

Following review of these documents, including prior intelligence, language, and academic testing, it is my professional opinion that Evelyn Towry meets DSM-IV-TR (Diagnostic and Statistical Manual of Mental Disorders-4th Edition-Text Revision) diagnostic criteria for Autistic Disorder, rather than for Asperger's Disorder.

Based upon my review of the test results from the Wechsler Preschool and Primary Scale of Intelligence-Third Edition administered on 5/16/06, Evelyn meets DSM-IV-TR diagnostic criteria for Mild Mental Retardation with a Full Scale score of 68. Her adaptive functioning was also found to be significantly poor during that evaluation.

Based upon my review of the test results from the Clinical Evaluation of Language Fundamentals-4th Edition (CELF-4) administered on 5/25/06, Evelyn was found to have very delayed functional language

---

421 W. Riverside Ste. 310
Spokane WA 99201
P: 509-456-3600 F: 509-747-4420
www.spokanebrain.com

Christine Guzzardo, Ph.D.
Jennifer Van Wey, Psy.D.
Jeanette Higgins, Psy.D.
Heather Dazell, MSW, LICSW
Katie Jessop, MA, LMHC
Staci Thompson, M.Ed.



EXHIBIT
2

Towry v. Pend Oreille School District                                            2

abilities with an Expressive Language standard score of 73; a Language Structure standard score of 73; and a Receptive Language standard score of 53.

The Wechsler Intelligence Scale for Children-Fourth Edition (WISC-4) was administered on 3/13/09 and again substantiated the diagnosis of Mild Mental Retardation with a Full Scale IQ of 70.

The CELF-4 was administered again in 4/09 and the functional language scores remained very low with an Expressive Language score of 73 and a Receptive Language score of 73. Her Language Memory score was 69 and Language Content was 66.

The profound language deficits and mental retardation are consistent with a diagnosis of Autistic Disorder.

With regard to the events of 1/09, while the records indicate that Evelyn's mother reported Evelyn to be fearful when she was placed in the police car, there does not appear to be evidence from subsequent treatment or school records that indicates that she was demonstrating a behavioral or emotional reaction specific to the events of 1/09.

I did not find evidence of either short or long term emotional or psychological damage to Evelyn as a result of the events of 1/9/09. The kinds of behaviors one could expect from a child who suffered an emotional trauma would likely be both emotional and behavioral and would be in *marked contrast* to the emotional and behavioral functioning prior to the event. Emotional symptoms might include frightening dreams, reenactment of the event, intense psychological distress at exposure to reminders of the event, avoidance of stimuli related to the event, intrusive thoughts about the event, difficulty sleeping, irritability, poor concentration, hypervigilance, exaggerated startle response, motor restlessness, and repetitive play in which themes or aspects of the event are expressed.

Treatment records do not document these kinds of symptoms or behaviors in Evelyn following the event. If these symptoms were present (e.g., poor concentration), records substantiate the existence of the behavior prior to the event and I did not find evidence in the records that the behavior worsened after the event. In fact, treatment and school records both reflect improvement in Evelyn's emotional and behavioral self-regulation over time as compared to her emotional and behavioral self-regulation prior to the event.

Given Evelyn's language deficits and very low level of cognitive functioning, it is likely that she did not understand the nature of the events that occurred on 1/9/09. Evelyn has a very poor understanding of what others say to or around her, as demonstrated in testing with the CELF-4. The combination of her language deficits and her mild mental retardation made it unlikely that Evelyn would have a clear awareness of what was happening and also that she would remember it in detail.

421 W. Riverside Ste. 310                         Christine Guzzardo, Ph.D.
Spokane WA 99201                                  Jennifer Van Wey, Psy.D.
P: 509-456-3600 F: 509-747-4420                   Jeanette Higgins, Psy.D.
www.spokanebrain.com                          Heather Dazell, MSW, LICSW
                                                   Katie Jessop, MA, LMHC
                                                  Staci Thompson, M.Ed.

Towry v. Pend Oreille School District                                                    3

Additionally, the event was short lived, she did not appear to perceive herself to be in any danger (there were no reported vocalizations on her part that indicated a fear that harm would befall her), her mother was readily available, and Evelyn had a history of different people intervening in the past to address her behavioral difficulties at school. Thus, for Evelyn this does not appear to have been an event that she perceived as particularly out of the ordinary. Any subsequent references to the event may have been influenced by what she heard others around her say about the event.

It is my conclusion that Evelyn Towry did not suffer any short term or long term emotional or psychological harm as a result of the events of 1/9/09.

I reserve the right to amend or modify my report in the event that I am provided with additional information related to Evelyn or the events of 1/9/09.

Christine R. Guzzardo, Ph.D.
Licensed Psychologist (PY00002557)
Clinical Neuropsychologist

421 W. Riverside Ste. 310
Spokane WA 99201
P: 509-456-3600 F: 509-747-4420
www.spokanebrain.com

Christine Guzzardo, Ph.D.
Jennifer Van Wey, Psy.D.
Jeanette Higgins, Psy.D.
Heather Dazell, MSW, LICSW
Katie Jessop, MA, LMHC
Staci Thompson, M.Ed.

# Christine R. Guzzardo, Ph.D.
## Northwest Neurobehavioral Institute
421 W. Riverside Avenue, Suite 310, Spokane, WA 99201
509.456.3600 (phone)   509.747.4420 (fax)
dr.guzzardo@spokanebrain.com
www.spokanebrain.com

## EDUCATION AND TRAINING:

| | |
|---|---|
| 2002 | **Postdoctoral Fellowship** Clinical Neuropsychology (APPCN)<br>University of California, Los Angeles, CA |
| 2000 | **Ph.D.** Counseling Psychology (APA Accredited)<br>University of Southern California, Los Angeles, CA |
| 1995 | **M.S.** Counseling Psychology<br>California Lutheran University, Thousand Oaks, CA |
| 1993 | **Certificate of Completion** of year-long Chemical Dependency training program<br>University of California, Santa Barbara, CA |
| 1988 | **B.A.** Business Economics<br>University of California, Santa Barbara, CA |

## EMPLOYMENT HISTORY:

| | |
|---|---|
| 1/09 to present | **Northwest Neurobehavioral Institute, P.S.**<br>Spokane, Washington<br><br>Partner in private practice group providing therapy and psychological/neuropsychological assessment for children, adolescents, and adults. |
| 4/02 to 12/08 | **Christine R. Guzzardo, Ph.D., P.S.**<br>Spokane, Washington<br><br>Clinical neuropsychologist in private practice. Conduct neuropsychological assessments with toddlers (age 3-4), school-age children, adolescents, and adults through the lifespan. Adult psychotherapy. |
| 7/96 to 6/02 | **Training within the Postdoctoral Neuropsychology Program (APPCN) program**<br>Neuropsychiatric Institute & Hospital<br>Department of Psychiatry & Biobehavioral Sciences, UCLA School of Medicine<br>Los Angeles, California<br><br>**Clinical Neuropsychology Postdoctoral Fellow (4 training sites)** |

|  |  |  |
|---|---|---|
| 9/00 to 6/02 | (1) | **Neuropsychology Assessment Laboratory**<br>Department of Psychiatry & Biobehavioral Sciences<br>UCLA Neuropsychiatric Institute & Hospital |

Christine R. Guzzardo, Ph.D.                                                    2

Conducted comprehensive neuropsychological evaluations of children, adolescents, and adults. Clients included patients with central nervous system insults including birth trauma, hypoxic injuries, brain tumors, arterial venous malformation, traumatic brain injury, seizure disorders, sickle cell disease, intracranial irradiation, stroke, pervasive developmental disorders, cerebral palsy, language impairment, AD/HD, learning disabilities, and behavioral/emotional disturbance.

| 9/00 to 7/01 | **(2) Pediatric Family Center** Miller Children's Hospital Long Beach, California | **(3) Maternal/Child Immunology Clinic** Department of Pediatrics UCLA Medical Center |
|---|---|---|

Part of interdisciplinary treatment teams. Conducted neuropsychological assessments of HIV/AIDS-infected and uninfected preschoolers and school-age children (age 4-18) for the purpose of informing medical treatment. Monitored neurocognitive development over time through serial assessment.

| 7/01 to 6/02 | **(4) The Help Group/UCLA Neuropsychology Program** Sherman Oaks, California |
|---|---|

Conducted comprehensive neuropsychological assessments of children, adolescents, and young adults. Referral questions include pervasive developmental delay, learning disabilities, language disorders, AD/HD, Tourette's disorder, and behavioral and emotional difficulties. Assisted in training interns and pre-interns.

### Clinical Neuropsychology Pre-Intern (4 training sites)

| 7/96 to 7/97 | **(1) The Help Group/UCLA Neuropsychology Program** Sherman Oaks, California |
|---|---|

Conducted neuropsychological and psychoeducational assessments of children and adolescents. Conducted cases jointly with postdoctoral fellow and training director.

| 9/97 to 8/99 | **(2) Neuropsychology Assessment Laboratory** Department of Psychiatry & Biobehavioral Sciences UCLA Neuropsychiatric Institute & Hospital |
|---|---|

Conducted neuropsychological evaluations of children and adolescents. Reviewed relevant records, assisted with planning the assessment and conducting clinical interviews. Scored and interpreted results; wrote neuropsychological evaluation reports.

| 5/98 to 4/00 | **(3) AIDS Service Center** Pasadena, California |
|---|---|

Conducted neuropsychological evaluations of adults with HIV and AIDS. Basic referral question was whether client was demonstrating neurocognitive symptoms associated with increasing immunosuppression. Clients presented with complicated histories including other medical conditions that affect central nervous system functions, active psychiatric symptoms, drug histories, previous head injuries, and numerous psychosocial issues.

| 7/98 to | **(4) Maternal/Child Immunology Clinic** |
|---|---|

Christine R. Guzzardo, Ph.D.                                                                                3

          **12/98**                Department of Pediatrics
                                        UCLA Medical Center

Conducted neuropsychological assessments of HIV and AIDS-infected and uninfected preschoolers and school-age children for the purpose of informing medical treatment.

**9/99 to**      **Psychology Intern**
**8/00**          Veterans Affairs Greater Los Angeles Healthcare System
                Sepulveda Ambulatory Care Center and Nursing Home (APA Accredited)
                San Fernando Valley, California

Conducted neuropsychological assessments and psychodiagnostic assessments of adult and geriatric veterans.  Brief- and long-term psychotherapy with diverse clientele.

**5/97 to**      **Counselor**
**8/97**          Didi Hirsch Community Mental Health Center - Metro Office
                Los Angeles, California

Time-limited individual and couples psychotherapy with diverse adult clientele.

## PUBLICATIONS:

Burke, W. R., Goodyear, R. K., & Guzzardo, C. R. (1998).  Weakenings and repairs in supervisory alliances: A multiple-case study.  American Journal of Psychotherapy, 52 (4), 450-462.

Llorente, A. M., LoPresti, C. M., Guzzardo, C. R., Evans, G., & Satz, P.  (2000).  HIV-1 infection spectrum disease: Neuropsychological manifestations and multicultural considerations in adulthood, adolescence, and childhood.  In C. R. Reynolds, E. Fletcher-Janzen, & T. Strickland (Eds.), Handbook of cross cultural assessment.  New York: Plenum.

Goodyear, R. K. & Guzzardo, C. R. (2000).  Psychotherapy supervision and training.  In S. D. Brown & R. W. Lent (Eds.), Handbook of counseling psychology (3rd ed.).  New York, NY: Wiley.

Goodyear, R. K., Cortese, J. R., Guzzardo, C. R., Allison, R. D., Claiborn, C. D., & Packard, T. (2000).  Factors, Trends and Topics in the Evolution of Counseling Psychology Training.  The Counseling Psychologist, 28 (5), 603-621.

Guzzardo, C.R., (2010).  Working with ADHD.  Spokane Family Magazine.

## PRESENTATIONS:

Guzzardo, C. R.  (1997, March).  Learning disabilities and attention deficit hyperactivity disorder in children.  Presentation to pediatric residents and nursing staff, The Help Group, Sherman Oaks, CA.

Burhke, W. R., Goodyear, R. K., & Guzzardo, C. R. (1997, March).  Weakenings/Repairs in the supervisory alliance: A multiple case study.  Presented at the annual conference of the American Educational Research Association, Chicago, IL.

Guzzardo, C. R. & Humphrey, L. A.  (1997, March).  Diagnostic indicators in nonverbal learning disabilities.  Presentation to clinical staff, UCLA Neuropsychiatric Institute, Los Angeles, CA.

Christine R. Guzzardo, Ph.D.                                                                                                  4

Guzzardo, C. R. & Humphrey, L. A. (1997, April). <u>Learning disabilities in children.</u> Presentation to clinical staff, Catholic Psychological Services, Los Angeles, CA.

Guzzardo, C. R. (1998, August). Supervisors in training speak: Reflections on our experience. In J.I. Rosenberg (Chair), <u>Self-reflection, deliberate practice, and critical thinking skills: Reconstructing clinical training.</u> Symposium conducted at the annual conference of the American Psychological Association, San Francisco, CA.

LoPresti, C. M., Llorente, A. M., Guzzardo, C. R., & Brumm, V. L. (1998, August). <u>Neuropsychological functioning in HIV-positive women: Consultation with community-based organizations.</u> Presented at the annual conference of the American Psychological Association, San Francisco, CA.

Guzzardo, C. R., Humphrey, L. A., & Levin, P. M. (1998, October). <u>Nonverbal learning disabilities: An analysis of the emerging profile.</u> Presented at the annual conference of the Los Angeles County Psychological Association, Los Angeles, CA.

Guzzardo, C. R. & LoPresti, C. M. (1999, January). <u>Neuropsychological findings in HIV/AIDS.</u> Presentation to clinical staff, AIDS Service Center, Pasadena, CA.

Guzzardo, C. R. & LoPresti, C. M. (1999, January). <u>Assessment of depression and suicide.</u> Presentation of clinical staff, AIDS Service Center, Pasadena, CA.

Guzzardo, C. R. (1999, April). Toward a test interpretation research agenda. In R. K. Goodyear (Chair), <u>Research and Clinical Issues in Test Interpretation.</u> Symposium conducted at the annual conference of the American Educational Research Association, Montreal, Canada.

Guzzardo, C. R., Goodyear, R. K., Lichtenberg, J. W., & Cortese, J. R. (1999, August). <u>Predicting men's depression and counseling willingness from gender role ideology.</u> Presented at the annual conference of the American Psychological Association, Boston, MA.

Guzzardo, C. R. (2000, April). <u>Effects of test interpretation style and level of affiliation on client involvement, session impact, and counselor influence.</u> Presented at the annual conference of the American Educational Research Association, New Orleans, LA.

Guzzardo, C. R. (2000, May). <u>Assortative mating: Spouse similarity for psychological traits and psychiatric disorders.</u> Presentation to clinical staff at Veterans Affairs Greater Los Angeles Healthcare System, Sepulveda Ambulatory Care Center and Nursing Home, Sepulveda, CA.

Guzzardo, C.R. (2001, September). <u>Neuropsychology seminar: Normal brain development and the neurobiology, assessment, and diagnosis of neurodevelopmental disorders.</u> Presentation to clinical psychology interns at The Help Group, Sherman Oaks, CA.

Guzzardo, C.R. (2002, February). <u>Reading disorder: A review of subtypes.</u> Presentation to clinical and research staff, Neuropsychiatric Institute & Hospital, Los Angeles, CA.

Guzzardo, C. R. (2004, July). Private practice in the 21st century. In S. Ruiz (Chair), <u>Psychology careers.</u> Symposium conducted at the annual conference of the American Psychological Association, Honolulu, HI.

Christine R. Guzzardo, Ph.D.                                                                                     5

Guzzardo, C. R. (2005, April).  <u>Making (and Keeping) Friends: Social Skills in Autism Spectrum Disorders</u>.  Presented at the 13th Annual Autism Society of Washington's Best in the Northwest Autism Conference, Kennewick, WA.

Guzzardo, C.R. (2006, March).  <u>Neuropsychology of Asperger's Disorder and High Functioning Autism</u>.  Professional presentation to clinical staff, parents, and community.  Spokane, WA.

Guzzardo, C.R. (2008, March, April, May).  <u>IEPs (Individual Education Programs) That Work!</u>  Community presentation.  Spokane, WA.

Guzzardo, C.R. (2008, July).  <u>Brief Introduction to Neuropsychology.</u>  Presentation to the University Hearing and Speech Clinic, Spokane, WA.

## TEACHING:

| | |
|---|---|
| **1/03 to 12/06** | **Adjunct Professor**<br>Gonzaga University<br>Spokane, Washington<br><br>Instructor for upper division undergraduate clinical psychology courses. |
| **7/01 to 6/02** | **Clinical Supervisor**<br>The Help Group/UCLA Neuropsychology Program<br>Sherman Oaks, California<br><br>Provided direct clinical supervision to three practicum/pre-intern trainees within the neuropsychology postdoctoral fellowship program. |

## PUBLIC SERVICE:

| | |
|---|---|
| **6/07 to Present** | **Board Member** Washington State Examining Board of Psychology<br>Chair of Board for 2011 |
| **2005** | **Hurricane Katrina Mental Health Volunteer**<br><br>Provided crisis  assessment and counseling to people displaced by Hurricane Katrina at George R. Brown Convention Center in Houston, Texas. |

## HOSPITAL AFFILIATIONS:

Sacred Heart Medical Center, Spokane, WA.

## PROFESSIONAL AFFILIATIONS:

American Psychological Association Division 40 (Clinical Neuropsychology)
International Neuropsychological Society
National Register of Health Service Providers in Psychology
Pacific Northwest Neuropsychological Society

## Report Regarding *Towry v. Lake Pend Oreille School District*

### 1. Credentials

#### Education
1980 Washington State University
    B.A. Elementary and Special Education

1990 University of Idaho
    M.Ed. Education Administration

#### Certification
Idaho Education Credential; valid 9-01-2010 to 9-01-2015
Endorsements:
    Standard Elementary
        All Subjects K-8
    Administration
        School Principal Pre-K-12
        Director of Special Education
    Standard Exceptional Child
        Generalist K-12
        Consulting Teacher

#### Professional Experience
Post Falls School District
    1980-1986:  Special Education Teacher, Resource Program
        Post Falls Junior High School (1980-81)
        Post Falls High School (1981-86)

    1986-Present:  Special Education Director

#### Professional Memberships
Idaho Association of Special Education Administrators
Council for Exceptional Children
Association for Curriculum and Development

#### Awards
Idaho Special Education Administrator of the Year: 1998

#### Autism Training
Autism and the Law: What Cases Tell Us About Programming and Services
    Melinda Jacobs, May 2011

Autism: Key Components of an Effective School-Based Autism Program
    Jamie Pagliaro, Rethink Autism, Feb. 2011



EXHIBIT

Strategies for Supporting Students with Autism in Daily Transitions
     Barbara Doyle, Sept. 2010

Asperger's Syndrome: Social Pragmatics
     Timothy Kowalski, Oct. 2010

Teaching Learners with Asperger Syndrome
     Brenda Smith Myles, May 2010

An Essential-and Effective-Approach to Asperger's Syndrome: Theory of Mind
     Timothy Kowalski, 2008

Idaho Autism Education Conference, 2006
     Dr. James Ball: Curriculum for Early Elementary Aged Children, and
           Enhancing Social Skills Throughout the Educational
           Years
     Dr. Mary Bostick: Positive Behavioral Support Systems
     Dr. Gregory Abowd: Autism Technologies for Classroom and Home
     Dr. Robert Hendren: Autism Research Update from the MIND Institute

Pivotal Responses in the Treatment of Autism
     Robert and Lynn Koegel, March 2003

Applied Behavioral Analysis
     Marion Tso, March 2003

Formulating Effective IEPs for Children with Autism: Strategies for Success
     Amy Finkel, March 2003

Designing a Defendable Program for Children with Autism Spectrum Disorder
     Idaho Falls School District Staff, April 2002

Asperger's: Diagnosis and Treatment, Oct. 2002
     Dr. Miewald: Diagnosis Across a Lifespan
     Amy Ruane: Asperger's in the School Setting
     Tom Weddle: Social and Communicative Skill Therapy
     Liz Pechous: Making Critical Connections: Beyond Social Skills Training
     in the Mental Health Setting

Autism Spectrum Disorders
     Judi Hall, May 2001

Autism: Behavioral Treatment Across a Life Span
     Panhandle Autism Society, Sept. 1993

2. **Previous Expert Witness Experience/Publications**
I have not served as an expert witness in any legal cases.  I have not published any articles.

3. **Summary of Documents and Information Reviewed**
In creating this report, I reviewed the following documents:

> Plaintiffs' First Amended Complaint
>
> Plaintiffs' Complaint and Demand for Jury Trial
>
> Notice of Tort Claim
>
> Formal Complaint Filed with the State Department of Education
>
> State Department of Education Final Report
>
> Contact Logs maintained by the School District 9-11-07 through 2-17-09
>
> Eligibility Reports dated 06-12-06 and 04-07-09
>
> IEP, Amendments and related documents for 2008-09
>
> IEP, Amendments and related documents for 2007-08
>
> IEP and Amendments for 2006-07
>
> Psychiatric Evaluation from Northwest Psychiatric Associates, P.A.
>
> Behavior Intervention/Safety Plan 10-15-08
>
> Discipline Logs from Kootenai Elementary School
>
> Police statement regarding incident on 1-09-09
>
> Lake Pend Oreille School District Policy 504.1: Student Conduct
>
> Charles Towry's Deposition
>
> Spring Towry's Deposition

4. **Summary and Opinions**

After reviewing the documents and information regarding *Towry vs. Lake Pend Oreille School District*, it is clear that E.T. demonstrated significant inappropriate behaviors at school due to her disability. The Lake Pend Oreille School District (herein after referred to as the school district) implemented numerous interventions and strategies to address these behaviors.  The Individualized Education Program (IEP) team held frequent meetings and

amended E.T.'s IEP at least two times per year in the four years of documents reviewed (2006, 2007, 2008, and 2009). This was a dynamic situation that was frequently changing due to E.T.'s behavior. The school district made significant efforts to communicate with E.T.'s parents, her service coordinator, and other agencies involved in providing supports and services regarding her behavioral challenges. School district staff contacted Mrs. Towry by telephone calls, email, and regular mail. The school team reviewed and made adjustments to her Behavior Intervention Plan several times, as needed. Despite these efforts, E.T.'s behavior significantly escalated in the fall of 2008. These behaviors included defiance, destruction of property, refusal to comply with adult requests, and aggression. E.T. had been suspended several times as a result of these behaviors.

The school district scheduled an IEP team meeting for Dec. 12, 2008 to address this increase in inappropriate behaviors. While notice of this meeting was relatively short, Mrs. Towry was aware a meeting was to be held and notified the district she may not be able to attend. Contacting Mrs. Towry had been difficult, as she was not returning calls to the school. The building principal did speak with Mrs. Towry by phone about the upcoming IEP team meeting, and at this time Mrs. Towry discussed information she wanted to be shared at this meeting. The meeting went ahead as scheduled, without either parent in attendance. At this meeting the IEP and Behavior Intervention Plan were both reviewed and revised, and the team discussed including a safety plan as well. It was agreed that North Idaho Children's Mental Health would develop this safety plan and obtain Mrs. Towry's consent for its implementation. There appeared to be some confusion as

to whether the safety plan had been approved by Mrs. Towry; E.T.'s service
coordinator believed approval had been obtained and informed the school the
safety plan could be implemented.  Mrs. Towry had not actually signed or
approved of the plan, although emails indicate that she was asked to stop by North
Idaho Children's Mental Health to sign the plan.  Mrs. Towry indicated she would
but never did. Mrs. Towry voiced her objection to having the police called when
E.T. was violent with staff to Michelle Nader, the Day Treatment teacher, in a
phone conversation on Dec. 17, 2008.  Ms. Nader let her know that it was district
policy to contact police if a student became violent with staff.  At the time of the
incident, school district policy (#504.1) allowed district officials to contact law
enforcement for a number of specifically prohibited acts, including assault,
battery, and destruction or damage of property. A copy of the amended IEP and
the Behavior Intervention Plan were mailed to the Towry home on Dec. 17, 2008,
however Mrs. Towry denied receiving it.  The district confirmed the address was
correct with Mrs. Towry and noted that the documents had not been returned as
undeliverable.

On Jan. 9, 2009 E.T. exhibited behaviors that were potentially dangerous
to herself and others.  She was spitting, refusing to comply with adult requests,
stomping, kicking, screaming, and leaving the classroom without permission.  She
eventually had to be carried to the special education classroom by two staff
members, when she forcefully pinched the teacher's breast while being placed in
a chair. The special education teacher contacted Michelle Nader to ask for her
advice. The decision was made to contact the police for assistance due to the

aggressive nature of E.T.'s behavior.  The school principal called Mrs. Towry and

left a message on her cell phone explaining the incident, notified her that the

behavior intervention plan would be implemented, and the police would be called.

A message was also left with North Idaho Children's Mental Health regarding the

incident. The school principal called Mrs. Towry a second time (at work) and was

able to reach her to notify her of the situation.  Mrs. Towry met the police officers

in the school parking lot and was told she could pick up E.T. at the Juvenile

Detention Center.

It is my opinion that the Lake Pend Oreille School District acted

appropriately in contacting the police in this situation.  E.T.'s behavior had

escalated significantly despite numerous interventions implemented by the school.

She had injured at least two staff members that day: the special education teacher

and an instructional aide.  School personnel were following the Behavior

Intervention Plan developed at the Dec. 12, 2008 IEP meeting.  School officials

were also following the safety plan with the understanding it had been approved

by Mrs. Towry. District policy regarding student conduct (#504.1) was followed

when a student becomes aggressive; this policy allowed for law enforcement to be

notified if a student exhibited specifically prohibited acts including assault,

battery, and the damage or destruction of property.  The decision of whether to

arrest a student at school is made by the police, not school officials.  Once the

school district called the police and they arrived at the scene, school officials were

not responsible for subsequent police actions.

I reviewed the material provided to me by Mr. Hansen.  I have not had the opportunity to review all documents related to this case.  I reserve the right modify my report and add additional opinions if necessary.

Submitted by: _____*JoAnn Curtis*_____

        JoAnn Curtis
        Special Education Director
        Post Falls School District

Dated this 8th day of June, 2011.