PETER C. ERBLAND
JENNIFER H. FEGERT
PAINE HAMBLEN LLP
701 Front Avenue, Suite 101
Coeur d'Alene, ID  83814
Telephone: (208) 664-8115
Facsimile: (208) 664-6338
ISBA # 2456
ISBA # 7187


## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ET, a minor, SPRING TOWRY and CHARLES TOWRY individually, and behalf of ET TOWRY, their minor daughter, | Case No. 10-CV-292 |
| Plaintiff, | **DEFENDANTS BONNER COUNTY, KURT LEHMAN AND JUSTIN COLLINS' EXPERT WITNESS DISCLOSURE** |
| vs. | |
| LAKE PEND OREILLE SCHOOL DISTRICT NO. 84, and their Board of Trustees; Louise Zmuda, individually and as an employee of Lake Pend Oreille School District No. 84; Betsy Walker, individually and as an employee and agent of Lake Pend Oreille School District No. 84; BONNER COUNTY, a/k/a BONNER COUNTY SHERIFF'S DEPARTMENT; Deputy Justin Collins, individually and as an employee of the Bonner County Sheriff's Department; Deputy Kurt Lehman, individually and as an employee of the Bonner County Sheriff's Department, | |
| Defendants. | |

        COME NOW, Defendants, Bonner County, Kurt Lehman and Justin Collins, pursuant to

the Court's Scheduling Order as amended, and disclose the following experts:


DEFENDANTS BONNER COUNTY, KURT LEHMAN AND
JUSTIN COLLINS' EXPERT WITNESS DISCLOSURE- 1

1.  Scot Haug

    Post Falls Police Department
    1717 East Polston Avenue
    Post Falls, ID  83854
    Telephone:  (208) 773-3517
    Fax:  (208) 773-3200

Scot Haug is the Chief of Police of the Post Falls Police Department.   Chief Haug has extensive law enforcement experience and training and serves as the Chief of Police over one hundred employees and volunteers who work for the Department.

Chief Haug may be called to provide expert testimony on the following topics:

a.    Law Enforcement officers serve under the authority of and are an extension of the Sheriff in performing his or her duties.

b.    The rights of the Bonner County Sheriff in administering the Department is established by employment policies, procedures and customs of Bonner County as well as Idaho statutory authority.

c.    Bonner County's requirements for deputies to successfully complete Police Officers' Standards and Training (POST) Academy and hold a basic POST certificate.

d.    That as part of the POST training, each deputy is required to complete field training, which includes training and instruction on the appropriate use of force and the constitutional rights of the individuals involved in such incidents.

e.    That the deputy sheriffs working at the Bonner County Sheriff's Office are instructed on the appropriate and reasonable use of handcuffs.

e.    That the actions of the deputy sheriffs in this case were in keeping with lawful policies of the Bonner County Sheriff's Office and were reasonable and appropriate under the circumstances, given all of the facts of which the deputy sheriffs were aware at the time.

A copy of Chief Haug's report and curriculum vitae are attached hereto as Exhibit 1.

Chief Haug's opinions will be based upon the records and depositions produced by and to the Plaintiffs, upon his personal experience and training in law enforcement, and based upon his

familiarity with the facts of this case. Chief Haug may also offer testimony in rebuttal to the

Plaintiffs, as well as any and all of Plaintiffs' expert witnesses, including expert witnesses who

testify in his area of expertise who may be called at the trial in this matter.

    2.  Dr. Allen Bostwik

        901 East 2nd Avenue
        Spokane Washington, 99202-2257
        Telephone: 509-747-7700
        Fax: 509-747-8538

Defendants Bonner County, Kurt Lehman and Justin Collins hereby adopt as their own,

Defendants Lake Pend Oreille School District, Betsy Walker and Louise Zmuda's Expert

Witness Disclosure of Dr. Allen Bostwik. Copies of Dr. Bostwik's report and curriculum vitae

were filed with this court on June 13, 2011, and are by this reference adopted and incorporated as

if fully set forth herein.

    3.  Christine Guzzardo, Ph. D

        Northwest Neurobehavioral Institute
        421 West Riverside, Ste. 310
        Spokane, WA 99201
        Telephone: 509-456-3600
        Fax: 509-747-4420

Defendants Bonner County, Kurt Lehman and Justin Collins hereby adopt as their own,

Defendants Lake Pend Oreille School District, Betsy Walker and Louise Zmuda's Expert

Witness Disclosure of Christine Guzzardo, Ph.D. Copies of Dr. Guzzardo's report and

curriculum vitae were filed with this court on June 13, 2011, and are by this reference adopted

and incorporated as if fully set forth herein.

    4.  Defendants reserve the right to call as an expert any of Plaintiffs' experts listed,

including their medical care providers, as disclosed in response to interrogatories or requests for

production of documents or in medical records provided by the Plaintiffs' counsel.  These providers are expected to testify based upon their training and expertise, in accordance with their records.

5.   Defendants have made a diligent effort to comply with the requirements of F.R.C.P. 26 in making these disclosures.  Defendants reserve the right, however, to supplement and/or modify this disclosure as discovery warrants and, further, as provided by F.R.C.P. 26 with respect to rebuttal witnesses.

6.   Defendants reserve the right to add or substitute other witnesses for any of the witnesses identified herein who might become unavailable at the time of trial for reasons beyond the Defendants' control, despite the exercise of due diligence.

DATED this _14th_ day of June, 2011.

PAINE HAMBLEN LLP

JENNIFER H. FEGERT
Attorney for BCSD, Lehman and Collins

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _14th_ day of June, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system (if applicable) which sent a Notice of Electronic Filing to the following persons:

| | | |
|---|---|---|
| Kammi M. Smith | ☑ | CM/ECF SYSTEM |
| Winston & Cashatt | ☐ | HAND DELIVERED |
| 250 Northwest Blvd., Ste 107A | ☐ | OVERNIGHT MAIL |
| Coeur d'Alene, ID 83814 | ☐ | TELECOPY (FAX) 509-838-1416 |

Fred R. Palmer
106 W. Superior
Sandpoint, ID 83864

☑ CM/ECF SYSTEM
☐ HAND DELIVERED
☐ OVERNIGHT MAIL
☐ TELECOPY (FAX) 208-263-8983

Brian K. Julian
Anderson Julian & Hull
P.O. Box 7426
Boise, ID  83707

☑ CM/ECF SYSTEM
☐ HAND DELIVERED
☐ OVERNIGHT MAIL
☐ TELECOPY (FAX) 208-344-5510

By:

H:\CDADOCS\00228\00233\PLEAD\C059453

R. Scot Haug
Post Office Box 1011 – Post Falls, Idaho 83877
(208) 661-1235
scothaug@gmail.com

---

> **Defendant's Expert Witness Report – R. Scot Haug**
> **Preliminary**
> **June 14, 2011**
>
> **Towry vs. Bonner County, et al.**
> **U. S. District Court for the District of Idaho**
> **Case No. 10-CV-292**

**1.   Introduction:**

On May 24, 2011 I was contacted by Seann M. Mumford attorney for the defendants, and asked to review the above-mentioned case. Specifically, I was requested to address the reasonableness of the involved Deputies' actions given the circumstances presented at the time of the arrest of Evelyn K. Towry on January 9, 2009.  Mr. and Mrs. Towry, the parents of the child arrested, are the plaintiffs in the above-mentioned case.

On Monday, May 30, 2011 I received the documents pertaining to this case. Since that time, I have reviewed the documents provided.

Based on my review of the documents provided, as well as other research documents, it is my professional opinion that Deputy Collins and Deputy Lehman acted reasonably and appropriately in light of the facts and circumstances confronting the Deputies during the arrest of the defendant on January 9, 2009.

**2.   Documents and Information Reviewed:**

    a.   Deputy Collins' Incident Report and Associated Attachments
    b.   Report of Plaintiffs' Expert – D.P. Van Blaricom
    c.   Plaintiffs' First Amended Complaint
    d.   Defendants answer to first amended complaint.
    e.   Plaintiffs' first set of interrogatories to defendants.
    f.   International Association of Chiefs Of Police Model Policy – Encounters With The Developmentally Disabled.
    g.   Law Enforcement Bulletin, Contact with Individuals with Autism, April 2001
    h.   International Association of Chiefs Of Police Model Policy – Transportation of Prisoners
    i.   ADA Best Practices Tool Kit for State and Local Governments

This is a preliminary report. My opinions are based on reviewing the documents provided to me. I reserve the right to change my opinion if additional information is provided.

**3.   Opinions:**

Members of law enforcement and educators frequently deal with students who exhibit unacceptable behaviors in school. On some occasions, this anti-social behavior results in criminal actions on the part of the student. School violence has garnered national media attention; when violence occurs at schools law enforcement officers must respond appropriately. Law enforcement has the difficult position of responding to each situation and handling it based on the facts provided to them at the time. Typically, law enforcement agencies and educators use a

collaborative approach to resolve these types of behaviors. Teachers, staff and law enforcement play a critical role in ensuring a safe learning environment for students and school staff.  Occasionally, law enforcement must take actions to protect students, school staff, and themselves, including arrest. Law enforcement officers, and private citizens, may take a juvenile into custody when a crime has been committed.  This authority is defined within the *Juvenile Corrections Act, title 20, chapter 5* which states in part:

*20-516.APPREHENSION AND RELEASE OF JUVENILES -- DETENTION. (1) A peace officer may take a juvenile into custody, or a private citizen may detain a juvenile until the juvenile can be delivered forthwith into the custody of a peace officer, without order of the court:*

*(a) When he has reasonable cause to believe that the juvenile has committed an act which would be a misdemeanor or felony if committed by an adult; or*

*(b) When in the presence of a peace officer or private citizen the juvenile has violated any local, state or federal law or municipal ordinance; or*

*(c) When there are reasonable grounds to believe the juvenile has committed a status offense. Status offenses are truancy, running away from or being beyond the control of parents, guardian, or legal custodian and curfew violations. Status offenders shall not be placed in any jail facility but instead may be placed in juvenile shelter care facilities, except in the case of runaways, when there is a specific detention request from a foreign jurisdiction to hold the juvenile pending transportation arrangements.*

When making an arrest, officers must use a reasonable amount of force. Courts have held that handcuffing is a use of force and the use of such must meet the reasonableness standard when they are used by a police officer. *Idaho code 19-602* outlines how an arrest may be made and the fact that reasonable restrain may be made when affecting an arrest.

*19-602. Arrest, how made. An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of an officer. The defendant must not be subjected to any more restraint than is necessary for his arrest and detention.*

It is widely recognized that there is an inherent danger associated with the law enforcement profession. Officers are placed in harms way on a daily basis while performing their duties. Over 50,000 officers are assaulted each year[7], one in three officers assaulted is injured and over 70 officers make the ultimate sacrifice and lose their lives each year. A significant percentage of these injuries and deaths occur during arrest situations. These situations account for nearly half of the injuries and felonious deaths to officers in the United States. Law enforcement trainers across the nation understand the increased risk associated with making an arrest and instruct police officers on the proper arrest techniques to safely place someone under arrest. Handcuffs are used by law enforcement officers for the following reasons[8]:

   i.   Protect the officer
   ii.  Prevent prisoner escape
   iii. Protect the suspect from himself
   iv.  Prevent the destruction of evidence

Although it is infrequent that children injure law enforcement officers, law enforcement must be prepared to deal with unexpected situations in the routine calls they handle[9]. A child becoming violent with law enforcement

---

[7] *Law Enforcement Officers Killed and Assaulted (1997)*

[8] *Idaho Peace Officer Standards and Training Arrest Techniques Manual*

9 *FBI Law Enforcement Bulletin - Contact with Individuals with Autism, April 2001*

officers does occur and officers must keep their safety, as well as the child's safety, in mind when dealing with a child. This concern is escalated when dealing with a child who has displayed aggressive behaviors.

**4.   Reasonableness of the Use of Force:**

In forming my professional opinion to determine the reasonableness of the Deputies' actions, I have considered the follow facts:

a.   On January 9, 2009 at 12:58 P.M. Deputy Collins and Deputy Lehman responded to Kootenai School for a reported battery. Deputy Collins reported that the information he was provided was this was an on-going problem with the child and the school was requesting law enforcement assistance.

b.   Upon arrival to the school, Deputy Collins made contact with the teacher, Louise Zmuda and the school Principal, Betsy Walker. Both employees reported that the child had battered Ms. Zmuda, by grabbing her breast "really hard."

c.   Deputy Collins reported that he received information that Evelyn Towry had battered other persons in the school earlier. Additionally, Evelyn had spit on staff and kicked them prior.

d.   Both Ms. Walker and Ms. Zmuda requested that criminal charges be pressed.

e.   Battery is a crime under Idaho Code and is defined in 18-903(b), - *the Actual, intentional and unlawful touching or striking of another person against the will of the other.*

f.   Law enforcement and private citizens are authorized to place a juvenile under arrest when they have probable cause that the juvenile has committed a crime. This authority is defined within the *Juvenile Corrections Act, title 20, chapter 5.*

g.   Deputy Collins contacted the on call, Deputy Prosecutor prior to the arrest and made him aware of the situation. The Prosecutor advised the Deputy to take Evelyn into custody for the crime. This is consistent with recommended law enforcement operating procedures[10].

h.   Handcuffing an arrestee is a normal, customary police practice. This technique is taught by law enforcement trainers across the Nation and is recommended by the International Chief's of Police Association, Federal Bureau of Investigations, [11] and the Idaho Peace Officers Standards and Training[12].

i.   Deputy Collins handcuffed Evelyn with her hands in front, and placed a jacket over the handcuffs to de-escalate the situation.

j.   Deputy Collins walked with Evelyn out to his patrol vehicle where he was contacted by Ms. Towry, Evelyn's mother. Deputy Collins explained the situation to the mother and asked that she follow him to the Juvenile Detention Center where she could pick up Evelyn.

k.   The child was transported to the Juvenile Detention Center and then released to the parent after the proper paperwork was completed.

---

10 *FBI Law Enforcement Bulletin - Contact with Individuals with Autism, April 2001*

11 *In the Line of Fire, A Study of Assaults on our nations law enforcement officers – October 1997 - Page 42*

12 *Idaho Peace Officer Standards and Training Arrest Techniques Manual*

l.   There are numerous references to Evelyn Towry being diagnosed with Autistic Spectrum Disorder. I am unable to verify, using the documents that I have been provided, that this is in case factual information. I am unable to confirm that the child has been diagnosed with this disorder by a qualified medical professional.

**5.   Conclusion:**

Deputy Collins responded to the Kootenai School at the request of the school staff. Once he arrived at the school, Deputy Collins was provided information by the staff of a crime that had occurred. The school staff provided detailed information about the crime of battery, and identified Evelyn Towry as the student who battered the teacher. Voluntary statements were filled out by the victim.  Furthermore, the school staff outlined several other incidents where the crime of battery had been committed by Evelyn. The actions of Evelyn would cause a reasonable person to be concerned for the safety of other students and school staff.

School staff requested that Evelyn be charged with the crime of battery. Officers and private citizens are authorized to place a juvenile into custody for a misdemeanor crime. This authority is defined within the *Juvenile Corrections Act, title 20, chapter 5.*

Based on the facts presented to Deputy Collins, he had probable cause to believe the crime of battery had occurred. Deputy Collins reports that he contacted the on call prosecutor and explained the situation he was facing. The Deputy Prosecutor reportedly told Deputy Collins to place the child into custody. Deputy Collins placed Evelyn into custody and as part of this arrest; he handcuffed her with her hands in the front.

Handcuffing is customary, common police practice[13]. Officers are expected to use caution when making the decision to handcuff, or not handcuff someone who is developmentally disabled. Although the child was only 8 years 9 months old and reportedly developmentally disabled, a reasonable officer would handcuff a child whom they placed into custody for the crime of battery, especially considering the fact that the child had just recently injured persons and was still acting aggressively.  Furthermore, it is unclear to me, in reading the documents, if the responding Deputies were aware of the mentioned diagnosis of Autistic Spectrum Disorder.

In their model policy *Transporting Prisoners October 1997,* the *International Associations of Chiefs of Police Association* recommend that "Officers may use discretion in handcuffing young juveniles but shall use authorized restraints necessary to control unruly or potentially violent juveniles of any age". Deputy Collins had information that Evelyn was violent with other persons and had injured her teacher which resulted in his response. This information would cause a reasonable officer to appropriately use handcuffs to protect himself, school staff, Evelyn, and other students at the school.

Deputy Collins transported Evelyn to the Juvenile Detention Center where the proper paperwork was completed and the child was released to her parent. This action is consistent with *Idaho Code 20-516(2).*

Deputy Collins' actions in this case were reasonable and consistent with commonly accepted police practice.

**6.   Rebuttal to The Opinions of the Plaintiff's Expert Witness**

Below is a response to the plaintiff's expert witness opinions outlined in section 9 and 10 of the report entitled *"Preliminary Report Plaintiffs' Police Practices Expert"* dated April 26, 2011.

**Note: There are numerous references to Evelyn Towry being diagnosed with Autistic Spectrum Disorder. I am unable to verify, using the documents that I have been provided, that this is in case factual information. I am**

---

13 *Transporting Prisoners - IACP Model Policy October 1997*

unable to confirm that the child has been diagnosed with this disorder by a medical professional.  I reserve the right to modify my opinion if additional information is provided.

### Opinion 1:

**Subsection 9 (b)**

It is not the role of law enforcement to engage in the discipline of an autistic third grader and, accordingly, defendant deputies misused their police authority to coercively assist school staff "in getting their point across", whatever that "point" may have been, to plaintiff and her parents.

*Response to opinion 1:*

*I would respectfully disagree with this conclusion.*

*While it is clear it is not law enforcements role to engage in the discipline of a child, there is no mention in the deputy's incident report, and no further evidence, that an arrest was made to discipline the child in question or "get a point across" as is alleged.*

*The deputy was dispatched to a report of a crime, and upon arrival he was provided information that a crime had occurred. Additionally, the school staff requested that charges be pressed for the crime of battery. The Deputy appropriately requested guidance from the Prosecuting Attorney on this matter and the decision was made to place the child into custody. Idaho code 20-516(2) provides that statutory authorization to place a juvenile into custody.*

### Opinion 2:

**Subsection 9 (C)**

Furthermore, not releasing plaintiff to her mother at the scene amounted to summary punishment and/or harassment, which served no mandatory or useful purpose.

*Response to opinion 2:*

*I would respectfully disagree with this conclusion.*

*Once an arrest is made, it is customary to transport the individual to a detention center. Idaho code 20-516 (3) outlines the appropriateness of transporting a juvenile to a detention center for processing the appropriate paperwork. There is no evidence to suggest that the action of transporting the child to the Detention Center was done as "summary punishment and/or harassment". The documents show that Deputy Collins made contact with the mother, Spring Towery, in the parking lot of the school. Furthermore, documents show that the Deputy explained the situation to the mother and asked that's she follow him to the Detention Center.*

### Opinion 3:

**Subsection 9 (D)**

Additionally, handcuffing an 8-year-old autistic girl was both unnecessary and violated a reasonable standard of care, as will be further explained hereafter;

*Response to opinion 3:*

*I would respectfully disagree with this opinion.*

*Officers are provided the training to make decisions regarding arrest and the appropriate use of handcuffs. Officers rely on their training and the information they are provided to determine how best to secure someone placed into custody.*

*Upon arrival, Deputy Collins was provided information that the child he placed into custody had injured a teacher just prior to his arrival. Additionally, the child had spit on and battered other individuals earlier. Based on this information, a reasonable officer would understand the importance of securing the child in handcuffs to protect themselves, the child and other persons in the vicinity.*

*Had the child decided to act out after the arrest and the Deputy had not used handcuffs, it places the child at an increased risk and it is very possible the child may have been injured trying to restrain her. The use of handcuffs when someone is placed into custody is customary, accepted practice in law enforcement.*

**Opinion 4:**

**Subsection 9 (e)**

**As regards a reasonable standard of care for addressing a situation such as this, the authoritative National Law Enforcement Policy Center Model Policy on Encounters with Mentally Disabled provides both relevant insight and direction:**

> **1). "As many as 1.5 Million Americans are affected by autism"**
> **a) "most Police Officers WILL at some time encounter autistic or otherwise developmentally disabled persons", who "are about seven times more likely than others to come into contact with the police"**
>
> **b) "This disability affects between 2 and 6 individuals per 1,000 in the United States"**

*Response to opinion 4:*

*I concur with these statements.*

**Opinion 5:**

**Subsection 9 (e) (2)**

> **2). "Police officers may encounter such persons in a wide variety of situations and the vast majority of these will relate to unruly behavior"**
>
> > **a). "The officer's best source of information concerning the individuals condition and how best to deal with him/her comes from those who know him/her best" (i.e. – parents and/or social worker, both of whom were on scene),**
> >
> > **b). "When these individuals are available or can be readily contacted, officers should avoid confronting the subject".**

*Response to opinion 5:*

*The staff at the school attempted to contact the parents, who were unavailable to immediately respond to assist. Mrs. Towry (Evelyn's mother) did not arrive until the child had been placed into custody by the Deputy.. According to the report filed by Mrs. Walker, Evelyn continued to act out by "clenching her fist"*

*and making statements that "her life was over" even with the PSR worker in the room. This anti-social, physical behavior was concerning enough for the school staff to call the police and request assistance in dealing with this child. Furthermore, the school staff requested charges be filed, a reasonable request.*

**Opinion 6:**

**Subsection 9 (e) (3)**

> **3). Officers should take all reasonable steps to avoid taking an autistic or otherwise developmentally disabled person into custody" and that decision "can be explained to complainants who may have a cause of action":**

>> **a). "This normally involves the release of the person to the care of a parent or other authorized care giver" (i.e. – social worker on scene).**

>> **b). "An arrest in general and constraints in particular may elicit a strong physical and emotional response from the individual".**

*Response to opinion 6:*

*It is my opinion that the school staff and Deputies used reasonable steps in dealing with Evelyn. There may be times that alternative options may be appropriate as outlined in the IACP Model Policy, but there are times when officers are required to arrest or detain someone with disabilities[14]. This is a case where the child, staff, deputies, or other children may have been in danger had constraints not been used.*

**Opinion 7:**

**Subsection 9 (e) (4)**

> **4). "If an officer must take a person into custody, he or she should determine, preferably with the aid of a supervisor, whether handcuffs or other restraints are required":**

>> **a). Unnecessarily doing so "can cause such a person great anxiety or agitation".,**

>> **b). If (as it should have been with an 8 -year-old girl), "it is determined that the person can be controlled by means short of physical constraints, handcuffs should not be used",**

*Response to opinion 7:*

*Deputy Collins was provided information that would cause a reasonable officer to determine that there was a continuing risk of injury to the school staff, officers, and fellow students. A reasonable officer would understand, based on their training and experience that juveniles are capable of killing and/or injuring officers[15] and handcuffing a juvenile who has acted out in a physical way is appropriate. Deputy Collins took reasonable steps to reduce the fear of the child and calm the situation by the way the handcuffs were applied.*

---

14 *Law Enforcement Encounters with Persons who are Developmentally Disabled – Concepts and Issues Paper, Page 4*

15 *Violent Encounters A Study of Felonious Assaults on Our Nation's Law Enforcement Officers- August 2006, Page 54*

<u>Opinion 8:</u>

**Subsection 10**

    **b). The developmental disability of autism qualifies for inclusion under ADA requirements, as "mental impairment"**

*Response to opinion 8:*

*I agree with this statement.*[16]

<u>Opinion 9:</u>

**Subsection 10**

    **c). The law enforcement community's early attempts to be excluded from ADA compliance were categorically rejected:**

*Response to opinion 9:*

*I agree that the law enforcement community is required to comply with ADA requirements.*

<u>Opinion 10:</u>

**Subsection 10**

    **d). Accordingly, BCSD was required to provide the mentally ill with "reasonable access" to law enforcement services and programs, including adequate policy and training to prevent violations;**

*Response to opinion 10:*

*Public entities must reasonably modify their rules, policies, and procedures to avoid discriminating against people with disabilities*[17]. *In my review of the documents provided to me, I can find no services or programs that were inconsistent with the Americans with Disabilities Act (ADA).*

<u>Opinion 11:</u>

**Subsection 10**

    **e). Such "reasonable access" includes the right to not be subjected to:**

        **1). Wrongful arrest, due to effects of mental impairment that the arresting officer misperceived to be criminal,**

        **2). Greater injury or indignity than others:**

---

[16] *28 C.F.R. § 35.104(1)(i)(B). - ADA*

[17] *ADA Best Practices Tool Kit for State and Local Government - http://www.ada.gov/pcatoolkit/chap1toolkit.htm*

*Response to opinion 11:*

*There is no evidence that the Deputies who responded to the call in question did not provided "reasonable access" to Evelyn. Deputy Collins made an arrest based on the facts provided to him at the time. His actions were consistent with State law and ADA.*

*Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the Services, programs, or activities of a public entity, or be subjected to discrimination by any such entity". A claim under Title II, however, requires as a general matter that a plaintiff in an ADA matter demonstrate that the discrimination he faced was by reason of his disability.*

*I can find no evidence that would support that Evelyn was discriminated against due to the alleged disability.*

### Opinion 12:

**Subsection 10**

> **f). State and local governments were required to conduct a "self–evaluation" for ADA compliance by January 26, 1993 and to bring their policies and procedures into compliance with ADA mandates.**
>
> **g). A "self evaluation entails a survey of a law enforcement agency's clientele for special needs, an examination of how those accommodations and changes in policies, procedures and training to fulfill those accommodations with the mandates of the ADA;**
>
> **h). Until further discovery is completed, it is yet unknown if the BCSO was ADA compliant but defendant deputies conduct toward plaintiff, under the undisputed fact pattern of this incident, certainly raises ADA questions of policy and training.**

*Response to opinion 12:*

*If a self-assessment was required, there is no evidence that this was or was not completed. I have not been provided any information regarding this matter and will comment additionally once further information is provided.*

7. **Qualifications:**

I am currently employed by the Post Falls, Police Department as the Chief of Police, in Post Falls Idaho. As the Chief of Police, I am responsible for the operation and oversight of approximately 100 employees and volunteers who work for the Department. As Police Chief, I oversee and direct all activities of the Police Department including the development of policy and procedure for the Department. I frequently review use of force reports and determine the appropriateness of force used by officers. My responsibilities include strategic planning for use of resources, coordinating the activities of the department with those of other local departments and ensuring that services provided and development plans are of the highest quality.  I am responsible and accountable for accomplishing departmental planning and operational goals and objectives and for furthering City goals and objectives within general policy guidelines.

I began my career with the Post Falls Police Department in 1986, as a volunteer Reserve Police Officer. During my law enforcement career, I have held the positions of Reserve Officer, Reserve Sergeant, Animal Safety Officer, Code Enforcement Officer, Patrol Officer, Field Training Officer, Sergeant, Administrative Sergeant, Lieutenant and Captain.

I am a graduate of North Idaho College and hold the Advanced, Supervisory, Management and Arrest Techniques Instructor certifications for the Idaho Peace Officer Standards and Training. I currently serve in an advisory role with North Idaho College as the Vice Chairman of the North Idaho College Law Enforcement Program Advisory Committee. This committee provides leadership and recommendations to the College for the Law Enforcement Program and the Idaho Peace Officers Standards and Training Police Academy.

I am a graduate of the 201st Session of the FBI National Academy in Quantico, Virginia. Most recently, I have served as President of the Montana – Idaho Chapter of the FBI National Academy Associates.

I have been an Idaho Peace Officer Standards and Training instructor since 1992 and served as the primary Arrest Techniques and Handcuffing Instructor at North Idaho College for nearly ten years. In addition, I was the primary Arrest Techniques and Handcuffing Instructor for the North Idaho Reserve Academy. As SWAT Commander I have received both the basic and SWAT team commander training from the National Tactical Officer Association. I have consulted with numerous agencies regarding use of force issues.

In addition to being recognized as an expert in Arrest Techniques, I have been recognized as an expert in the use of technology to increase efficiency in law enforcement. I have served on the Department of Justice, National Institute of Justice Communication Technology Working Group where I provide input on national technology and communication related trends and issues. I have written several articles, which were published in law enforcement publications regarding technology in Law Enforcement, and I have lectured on numerous occasions about the use of technology in law enforcement. I am currently participating in several working groups with the International Association of Chiefs of Police (IACP). I have participated with working groups and the IACP in model policy development in the past.

I have received extensive training in Arrest Techniques, which includes the use of handcuffs and the associated techniques used by officers to apply them. I have taught hundreds of law enforcement officers in the proper techniques an officer would use to place an arrestee safely and legally into custody.

I was a committee member for the Idaho Peace Officers Standards and Training where I participated in the standardization and development of the Idaho Arrest Techniques and Handcuffing Curriculum for the State of Idaho. I was one of twelve law enforcement practitioners who participated from across the state. The manual we developed has been used to train thousands of police officers across the state and is still in use today by the Idaho Peace Officer Standards and Training.

I was selected to serve as a representative of the Statewide Lexipol Model Policy Board where I assisted ICRMP and Lexipol in developing a statewide model policy for the State of Idaho. Additionally, as a Captain with the Post Falls Police Department I research, developed, implement and provided training to all Department staff on a complete re-write of the Police Department Policy Manual.

I have served as a technology consultant to companies such as Lockheed Martin, Booz|Allen|Hamilton and the International Chiefs of Police Association, National Institute of Justice (NIJ) and Department of Homeland Security.

I have been responsible for implementing many of the City's Emergency Services technology programs. The technology projects have been featured in Computer World magazine, CEO magazine, and the Harvard University Government Innovators Network.

Most recently, I have served as a paid consultant, and guest speaker for Law Officer Magazine. I have participated in the instruction of the "Below 100" program. This program is an effort to reduce law enforcement officer deaths across the nation by reinforcing proper officer safety measures. I have spoken to law enforcement officers on many occasions regarding this program. These speaking engagements include the Shot Show in Las Vegas, Nevada, as well as, the Idaho Chiefs of Police Association Conference in Boise Idaho.

*R. Scot Haug*

R. Scot Haug

8. **Professional Experience:**

**2009 - Present**     **Chief of Police**
Post Falls Police Department                         Post Falls, Idaho

I currently serve as the Chief of Police for the Post Falls, Idaho Police Department. The Post Falls Police Department is an Accredited Police Agency. The Department has approximately 100 employees and volunteers and provides law enforcement service to a community of approximately 30,000 residents.

**1995- 2006**     **Part-Time Instructor - Law Enforcement Program**
North Idaho College - Coeur d'Alene, Idaho

Primary Instructor for Arrest Techniques and Handcuffing instruction, which included the instruction of self-defense techniques, handcuffing, use of force, use of impact weapons, and Taser. Responsible for self-defense instruction to all students in the law enforcement program. Also provided Arrest Techniques training to hundreds of Reserve Police Officer candidates during this time.

**2002 – Present**     **Consulting:**

Law Officer Magazine – Officer Safety Consultant

Law Officer Magazine – Law Enforcement Technology Consultant

FBI CJIS - Criminal Justice Information Systems Committee – Board Member

North Idaho College Law Enforcement Program Advisory Committee – Vice Chair

Arrest Techniques Consultant – Taser and Handcuffing

Technology Consultant – International Association of Chiefs of Police

Technology Consultant – International Association of Chiefs of Police – LPR Advisory Committee.

Model Policy Development - International Association of Chiefs of Police

Technology Consultant – Booze/Allen/Hamilton – San Diego

Grant Consultant – Lockheed Martin

Technology consulting to Various law enforcement agencies – Approximately 40

U.S. Department of Justice – Former Communications Technology Member/Advisor (COMTECH TWG)

**2007 – 2009**    **Captain**
Post Falls Police Department                          Post Falls, Idaho

Responsible for the operation of the four Divisions within the Department (Patrol, Communications, Investigations and Information Systems).  The Department consists of 95 full-time employees and volunteers with a budget in excess of $4.3 million and covers a City of over 26,000 people, and a 911 PSAP providing service to two jurisdictions.

**1997 – 2007**    **Lieutenant – Patrol, Communication and Information Systems Divisions**
Post Falls Police Department                          Post Falls, Idaho

Responsible for the Uniformed Patrol Division, 911 Communications Division and the Information Technology team. This included the supervision of 40+ employees in the different divisions. Responsible for the implementation of several Department programs including the reconstructing of the Department policy on two separate occasions. Position included the oversight of the Department SWAT team, and serving as the SWAT Commander.

**2000 – 2002**    **Systems Administrator**
Post Falls Police Department                          Post Falls, Idaho

Purchased, installed and implemented TCP/IP network for Police Department consisting of three separate buildings spanning three blocks, including 25+ client computes and several servers. Servers running Unix (SCO) and Windows operating systems. Served as the project manager for the research, design and implementation of multi faceted Citywide wireless LAN.  Held the rank of Lieutenant during this time.

**1994 – 1997**    **Administrative Sergeant**
Post Falls Police Department                          Post Falls, Idaho

Responsible for administrative duties including training, scheduling, purchasing and program implementation. Supervised Patrol Team, Animal Safety and Fleet Maintenance. Responsible for all Department training. Provided Arrest Techniques and handcuffing training to Department staff, as well as, agencies in the surrounding area. Served as the primary arrest techniques instructor for North Idaho College during my time as a Sergeant and Lieutenant.

| | | |
|---|---|---|
| 1992 – 1994 | **Patrol Sergeant** | |
| | Post Falls Police Department | Post Falls, Idaho |

Acting shift commander. Supervised Patrol teams responsible for the shift including incident commander as needed.

| | | |
|---|---|---|
| 1990 – 1992 | **Patrol Officer** | |
| | Post Falls Police Department | Post Falls, Idaho |

Worked as a Patrol Officer and Field Training Officer. As part of my duties, I attended training and developed the Department Field Training Manual. This manual was used to train law enforcement officers for our agency.

**1988 – 1990    Code Enforcement Officer/Animal Control**

**1986 – 1988    Reserve Police Officer/ Animal Control Officer**

**Education**     **North Idaho College**
                          AAS Law Enforcement
                          AAS Administration of Justice

**College of Southern Idaho**
**Lewis and Clark State College**
**City University**
**University of Virginia**

**POST**     Basic
**Certifications**   Intermediate
Advanced
Supervisor
Management
Arrest Techniques and Handcuffing – Idaho P.O.S.T. Instructor Certification **(2010)**

**Police Training**

2011     **Idaho Chiefs Of Police Association – Boise, Idaho**
                          Managing Police Pursuits
                          Idaho Innocents Project
                          Police Department Accreditation
                          Social Media in Law Enforcement
                          Legal updates

**International Association of Chiefs of Police, 35th IACP Law Enforcement Information Management Training Conference and Exposition, San Diego, Ca**

Attended various training sessions regarding law enforcement operations.

**International Chiefs of Police Association Annual Conference – Orlando Florida**
                          Criminal Justice Information Systems
                          Tactical Command Training and Preparedness

Effective Deployment of License Plate Recognition
Managing and Supervising for Officer Safety
Leadership – Gordon Graham
Foundation Board Development
Leading the Agency Through Tough Times
NIJ Equipment Standards – Handcuffing Standards
LESSS 4th Roll Call Video – Officer Safety Training

**Dave Grossman – School Violence and Terrorism – Coeur d' Alene, Idaho**
Discussion of school violence in America
Preventative measures for reducing school violence

**FBI National Academy Associates Four State Conference, Jackson Hole Wyoming**
Law Enforcement Officer Killed and Assaulted training
Leadership training

**Idaho Chiefs Of Police Association – Coeur d' Alane, Idaho**
Law enforcement leadership training
Legal updates
Alcohol and drug abuse amongst teens.

**International Association of Chiefs of Police, 34th IACP Law Enforcement Information Management Training Conference and Exposition, Atlanta Georgia**

Attended various training sessions regarding law enforcement technology.

**2009**    **Rocky Mountain Program Leadership Program – Cheyenne Mountain, Colorado**
**Co-Instructed – Arrest Techniques and Handcuffing class, Post Falls, Idaho.**
**FBI National Academy Associates Conference – Missoula, Montana**
Prescription drug training

**2008**    **FBI National Academy Associates Conference – Post Falls, Idaho**
Surviving a critical incident
Terrorism training
Preventing School Violence, Dave Grossman
**Strategic planning for law enforcement**
**Cyber Crimes Investigations - U.S. Attorney Generals Office**
**Property and Evidence Management – International Association of Property and Evidence**
**Certified Evidence Officer**

**2008**    **Taser Instructor Re-Certification, Spokane, Washington**

**2007**    **Critical incident command  - National Tactical Officers Association**
**Less Lethal Weapon Certification**

**2006**    **Taser Instructor – Taser International – Scottsdale, Arizona**
**Taser Armorer – Taser International –Scottsdale, Arizona**

**2005**    **FBI refresher training**
**Executive development**
**Employment law**

2004          SWAT Commander – National Tactical Officers Association - Las Vegas, Nevada
              Tactical team operator/active shooter/simunition
              FBI refresher training
              Forensic investigations

2003          Arrest techniques and Handcuffing
              Leadership
              FBI refresher training
              Taser Instructor

2002          Leadership
              Arrest techniques and Handcuffing

2001          Terrorism/Counter terrorism
              Arrest techniques and Handcuffing
              Leadership
              Computing Technology Industry Certification – Certified Computer Professional

2000          201st Session, FBI National Academy – Quantico, Virginia
                      Forensic Science
                      Chemical Munitions
                      Behavioral Science
                      Management
                      Press Relations
                      Legal Issues
              Arrest techniques and Handcuffing
              Arrest techniques and Handcuffing
              Executive health/Crisis management
              Chemical agents in law enforcement

1999          Basic SWAT Training/Certification
              Improvised bombs/Explosive devices
              Smith/Wesson Pistol
              Impact Weapons
              Firearms Instructor

1998          Arrest Techniques and Handcuffing
              Arrest Techniques and Handcuffing
              Techniques for Implementing Community Oriented Policing

1997          Training Assessment Conference
              Arrest Techniques and Handcuffing
              Arrest Techniques and Handcuffing
              Arrest Techniques and Handcuffing
              Leadership

1996          Personnel Defense Seminar – American Society of Law Enforcement Trainers.
              Scenario Based Training - American Society of Law Enforcement Trainers.
              ASLET Training
              ASLET Training
              Use of Force - American Society of Law Enforcement Trainers.

|  | Chemical Munitions Instructor - American Society of Law Enforcement Trainers. |
|---|---|
|  | Chemical Munitions Overview - American Society of Law Enforcement Trainers. |
|  | Arrest Techniques and Handcuffing |
|  | Arrest Techniques and Handcuffing – Instructor |
|  | Spontaneous Knife Defense Instructor – PPCT Management Systems |
| 1995 | Officer Involved Shooting and Fatal Investigation |
|  | Interview and Interrogation |
|  | Drug Enforcement |
|  | NIK Identification Instructor – Master Trainer |
|  | Supervisor Skills for the 90's |
| 1994 | Call Response Training |
|  | Domestic Violence |
|  | Kaminsky Field Training |
|  | Chemical Munitions |
| 1993 | Supervising Problem Employees |
|  | First Line Supervisor |
|  | Public Information Officer Training |
| 1992 | First Line Supervisor |
|  | Field Training Officer |
| 1991 | Arrest Techniques and Handcuffing – Instructor |
|  | Officer Survival |
|  | Drug Team Management |
|  | Instructor Development |
| 1990 | WIN Seminar – Street Survival |
|  | Tactical Edge Seminar |
|  | Marijuana Investigation |
|  | Drug Dog Training |
|  | Search Warrants |
|  | INOA Firearms |
|  | Firearms Training |
| 1989 | Basic Idaho Peace Officer Standards and Training  Police Academy – Session 83 |
| 1988 | Police Officer Survival Tactics |
| 1986 - Present | Various Training Schools – North Idaho Reserve Academy, computer related training, A-Plus computer certification. |

## Achievements

|  | Speaker – Idaho Chiefs of Police Annual Conference, Coeur d' Alene, Idaho. |
|---|---|
| 2011 | Speaker – Shot Show – Law Officer Magazine, Las Vegas, Nevada |
|  | Speaker – International Association of Chiefs of Police, 35th IACP Law Enforcement Information Management Training Conference and Exposition, San Diego, California. |

City of Post Falls Americans with Disabilities (ADA) Committee – Member

| | |
|---|---|
| **2010** | Speaker – International Chiefs of Police Association Annual Conference, Orlando, Florida. Guest Speaker. |

Speaker – Idaho Chiefs of Police Annual Conference, Coeur d' Alene, Idaho.

Speaker – International Association of Chiefs of Police, 34th IACP Law Enforcement Information Management Training Conference and Exposition, Atlanta, Georgia.

Speaker - American Association of Motor Vehicle Administrators, 2010 Region IV Annual Conference, Boise, Idaho

**2009**  **Author – License Plate Recognition**
January 2009 – Law Officer Magazine

**Presenter - License Plate Recognition Web Cast**

June 2009 – Law Officer Magazine

**Presenter** – Cal Amp Mobile Users Conference, San Diego, California

**FBI National Academy Associates – Montana/Idaho Chapter - Board Member**

**2007 – 2008**  **FBI National Academy Associates – Montana/Idaho Chapter President**

**2005 – Present**  **FBI National Academy Associates Idaho Advisory Board – Current Board Member, Past Board Chairman**

**2006 – Present**  **FBI National Academy Associates Youth Leadership Program – Board Member**

**1995 – 2006**  **North Idaho College Law Enforcement Program Advisory Board – Member**

**1997**  **North Idaho College Program Assessment Team – Member**

Worked as a three-person team to review the law enforcement program operations, including paperwork, curriculum, instructors and adherence to P.O.S.T. requirements.

**Oral Board Member**
Lieutenant and other positions - Kootenai County Sheriff's Department, Coeur d'Alene

**1993 - Present**  Police Department, Rathdrum Police Department, Spokane County Sheriff's Department.

**2007**  **Use of Force Shooting Review Board**

Kootenai County Sheriff's Department (Idaho)

| | |
|---|---|
| **2007** | **Author – Electronic Citations in Law Enforcement** |
| | October 2007 – <u>Law Officer Magazine</u> |
| **1995- 2006** | **Lead Instructor – Arrest Techniques and Handcuffing** |
| | North Idaho Reserve Academy (Coeur d'Alene, ID) |
| **2006** | **ICRMP/Lexipol State Policy Development Panel – Member** |
| | Served as a panel member to assist in the development of a Statewide model policy for use by Idaho law enforcement agencies. |
| **2003** | **Presenter – Technology in Law Enforcement, Pushing the Boundaries** |
| | <u>Computer World Magazine</u> – Mobile and Wireless World Conference, Palm Springs, California. |
| **1999 – 2001** | **Member – Idaho POST Arrest Techniques Curriculum Committee** |
| | Idaho Peace Officer Standards and Training (POST) Council – One of several members who assisted in the development of the POST Defensive Tactics and Arrest Techniques Manual. |
| **1998** | **Spirit Lake Police Department Assessment** |
| | Worked with Post Falls Police staff to assist the Spirit Lake Police Department with consulting to enhancing police services. |
| **1991** | **Officer of the Year - American Legion, Post Falls, Idaho** |
| | **Officer of the Year – Eagles Club, Post Falls, Idaho** |

9. **Compensation:**

My compensation rate for my work on this issue is $175.00 per hour for review, and $200.00 per hour for deposition and trial.